IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

RECEIVED YT

11/9/2018

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

| | |
|---|---|
| LEONARD LOGAN, Plaintiff, | ) Case no. |
| vs. | ) |
| BRUCE RAUNER,(IL) Governor, ILLINOIS DEPT. OF CORR. (IDOC), JOHN R. BALDWIN, Director of IDOC, ADMINISTRATIVE REVIEW BOARD (ARB) ANN LAHR, ARB Chairperson, DEBBIE KNAUER, ARB Chairperson, DIXON CORR. INSTITUTION (DCC), | ) Plaintiff's First Amended Complaint |
| DONALD ENLOE, Chief Admin. Offc. (CAO)-DCC, DEBORAH WHITELY, Adj. Comm. Chairperson, RAPHAEL E. CHAVEZ, Adj. Comm. Chairperson, | ) **18CV6874 PC SCAN** |
| ADJUSTMENT COMMITTEE (Adj. Comm.)-DCC, C/O, REMMERSE, Adj. Comm. Chairperson, C/O, Reynolds, Lieutenant offc.-DCC, | ) |
| C/O, GROHAN, Lieutenant of DCC, C/O, BLANTON, (#10796), Lieu. offc.-DCC, MERL T. SAGE, (#8227) Lieu. offc.-DCC, | ) |
| C/O, GEE, of DCC, C/O, MANZANO, of DCC, C/O, McCALLISTER, Sgt. offc. DCC, C/O, DANIELS, of DCC, C/O, SPELIG, of DCC, | ) |
| COLIN S. BRINKMEIER (#4203), C/O, of DCC, JAMES MARTENS, Griev. offc. of DCC, | ) |
| BILLIE W. GREER, ARB Chairperson, ILLINOIS STATE POLICE (ISP), Director, Defendants. | ) |

JURISDICTION & VENUE, NATURE OF ACTION

1) This action arises under the First, Eighth and Fourteenth Amendments of the United States Constitution; Conspiracy (42 USC §1983); Declaratory Relief under 28 USC Sections 2201-02; and, Injunctive Relief pursuant to RULE 165 of the FED. R. CIV. P.

2.) These claims against defendants arise out of the same series of transactions or occurrences, and it involves a question of fact or law common to all defendants pursuant to Rule 20 of the FED. R. CIV. P.

3.) This action also includes pendant party state-law claims arising under 735 ILCS 10/9-102 alleging respondeat superior, intentional infliction of emotional distress, identification, and dereliction of duties.

4.) This court has jurisdiction over all federal claims in this action pursuant to the Civil Rights Acts of 1964 and/or 1968; 28 U.S.C §§ 1331, 1343(3). This Court also has authority to exercise jurisdiction over all relevant state-law claims pursuant to 28 USC § 1367(a).

5.) The acts alleged in this complaint were committed against plaintiff (by defendants) while plaintiff was a committed person of IDOC.

6.) Alleged acts were also allegedly committed by officials; acting under color of law, employed at IDOC. Therefore, venue is proper in this United States District Court of Illinois.

## PLAINTIFF

7.) Plaintiff, Leonard Logan, was, at all times mentioned herein, a committed person of IDOC. He is currently confined at IDOC's Lawrence Correctional Institution (LCC) in Sumner - Illinois.

## DEFENDANT

8.) Defendant, Bruce Rauner, is the Governor of the State of Illinois. At all times mentioned in this complaint, this defendant is the Agency Head of IDOC and is responsible for all committed persons and agents of the Department.

9.) Defendant, Illinois Department of Corrections (IDOC), is a municipality of the State of Illinois. At all times mentioned in this complaint, defendant is responsible for all persons and agents committed to the Department;

Defendant, John R. Baldwin, is the Director of IDOC. He is responsible for the administration of IDOC;

Defendant, Illinois State Police (ISP)-Director, is a municipality of the State of Illinois. At all times mentioned in this complaint, defendant is required to serve and protect the welfare of the public.

10.) Defendant, Administrative Review Board (ARB), is an agent of IDOC and/or extension of the State of Illinois. At all times mentioned in this complaint, the ARB is required, amongst other duties, to resolve inmate issues and send the findings for consideration to the Director.

11.) Defendants' Ann Lahr, Billie W. Greer and Debbie Knauer, are ARB Chairpersons of IDOC's ARB. At all times mentioned in this complaint, as agents' of the ARB, they are required to perform the duties as prescribed by their official title and/or scope of employment, to the end that the public interest and welfare may be furthered.

12.) Defendant, Dixon Correctional Institution (DCC), is an institution designated by IDOC. They are required-institution(s)-to be maintained for persons assigned as adults; and is responsible for persons committed to the department.

13.) Defendant, Donald Enloe, is the Chief Administrative Officer (CAO) of DCC. At all times mentioned in this complaint, he is required to be responsible for the administration of the institution he is assigned to - DCC.

14.) Defendant, James Martens, is a Correctional Counselor (CCII) of DCC. At all times mentioned in this complaint, this defendant acted under title of DCC's Grievance Officer (GO) and was required to address and resolve inmate issues in an impartial manner at the institutional level.

15.) Defendant, Adjustment Committee (AC) of DCC, is an impartial tribunal assigned to institutions of the Department. At all times mentioned in this complaint, defendant is required to conduct and conclude hearings on disciplinary reports which constitute a major chargeable offense(s), in an impartial manner.

16.) Defendants' Colin S. Brinkmeier, C/O-Daniels, C/O-Spelig, C/O-Gee, C/O-Manzano, are correctional officers of DCC. At all times mentioned in this complaint they were assigned to DCC's security staff.

17.) Defendants, Raphael E. Chavez, Deborah L. Whitely, C/O-Remmerse, and C/O-Reynolds are C/O's of DCC. At all times mentioned in this complaint, these defendants, respectively, were assigned as chairpersons' of the AC at DCC, and were required to conduct and conclude hearings in an impartial manner.

18.) Defendants, Merl T. Sage (#8227); c/o, Blanton and c/o, Grohan are all correctional officers (c/o) of DCC. At all times mentioned in this complaint, defendants' held the title/rank of Lieutenants'.

19.) Defendant, c/o, McCallister, is a correctional officer (c/o) of DCC. At all times mentioned in this complaint, defendant held the title/rank of Sargeant.

## NATURE OF ACTION

20.) On December 12, 2014, Plaintiff and Defendant IDOC, reached a settlement agreement for monetary compensation under Court of Claims Case No. 14-CC-1503, involving the destruction of plaintiff's property; (See, Attachments: Ex. A)

21.) Shortly thereafter, a series of transactions and/or occurences between defendant IDOC and its agents, municipalities, institution(s), and those of which it may be associated with; acted, in collusion with one another, in bad faith, to impose atypical and significant hardship on plaintiff as a result of said settlement agreement (or) court proceedings under said case no.; the occurences are as follows;

22.) On Dec. 15, 2014, plaintiff was an offender confined to Defendant DCC by way of Defendant IDOC; on Dec. 15, 2014, at approx. 12:25 pm, Units 58 and 60 were both escorted into Defendant DCC's "southside" of the "dining hall", in which plaintiff was amongst the units; he was approached by Defendant Grohan in a inciteful and disrespectful manner;

23.) Defendant Grohan, literally and deliberately, walked into the pathway of plaintiff, as plaintiff tried to sit down; and defendant Grohan shoved his hand into the left shoulder of plaintiff and reached for plaintiff's I.D; this defendant, then, pushed passed plaintiff, and walked toward the I.D scanner, scanned plaintiff's I.D. then threw the plaintiff's I.D. to the floor;

24.) Defendant Grohan, then, walked back towards where plaintiff was standing and made the following derogatory comment "Nigger, now do you get the idea";

25.) Plaintiff asked that an incident report be made of what transpired and Defendant Grohan threatened plaintiff to either pick up the I.D. and sit down, or else; this was witnessed by inmate lashawn horton, # B-36879 ("Horton"), amongst a host of other inmates in the dining hall that evening; Plaintiff did not provoke the aforementioned actions of Defendant Grohan nor, did plaintiff committ a violation of rules;

26.) Plaintiff prepared and processed a grievance on Defendant Grohan's aforementioned actions, December of 2014, through institutional procedures of Defendant DCC; requesting Defendant be charged (Grohan) for putting hands on plaintiff; and disciplined for racial comment; (See, attachment A: Griev. (12/15/14))

27.) Grievance (12/15/14) was forwarded to Defendant Martens for review on March 16, 2015; who denied plaintiff's grievance, claiming plaintiff's witnesses were interviewed and their statements were inconsistent with plaintiff's

grievance; (See, attachment D: GO & CAO's Response (3/6/15)) and, Defendant Enloe "concurred" with Defendant Martens findings, providing no commentary for the concurrence; (id.)

28.) Plaintiff felt said defendants' conclusion to griev. (12/15/14) was adverse so, he prepared and sent an inquiry (Feb. of 2015) and the griev. (12/15/14) to Defendant Baldwin, who expedited said documents to Defendant ARB, Feb. 10, 2015, for determination; (See, attachments D: Pl.'s inquiry (2/4/15); and, B: Griev. (12/15/14) [Exibits])

29.) Defendants' ARB and Greer, returned said documents based on Plaintiff (Pl.) failure to include Defendants' Martens and Enloe, response with said documents received Feb. 10, 2015; (See, attachments F: ARB Correspondence (Compl. 2/25/15)) [Rec'v: Feb. 10, 2015]

30.) Plaintiff received Defendants', ARB and Greer, correspondence (returned) sometime after March of 2015 (approx.) or within March of 2015 (approx.); and was preparing to send the additional information required by Def.'s ARB and Greer so, that the 12/15/14 Grievance can be concluded; that information was sent by the pl. to Def. ARB, who addressed the Griev. (12/15/14), in conjunction, on **Aug. 28, 2015**; arbitrarily denying plaintiff's grievance; (See, attachments F: ARB and Director Reply (8/28/15)) Defendant Baldwin, in bad faith, concurred with said def.'s findings; (id.)

31.) While the aforementioned reply from def.'s ARB, Greer and Baldwin, were pending, the following acts against plaintiff occurred as he was still a ward of def.'s IDOC, DCC; under the administration of def.'s Baldwin and

Enloe:

   (a) On May 23, 2015, at approx. 6:39 pm, def. Brinkmiere wrote plaintiff an Inmate Disciplinary Report (IDR) for having his, newly purchased, T.V. (via settlement compensation with def. (IDOC)) on; in which, def. Brinkmiere's co-worker c/o, Dalke, destroyed pl.'s prior T.V that led to said settlement; (T.V. was not on; it was a compliance check.)

32.) Defendant Blanton and Brinkmiere entered Unit 60, en route to the South hallway and closed the door behind them; (that's when c/o [star no. 5878] announced over the intercom "No inmates allowed up the hallway.) Plaintiff had just left his room to go grab his laundry but, because defendant Blanton slammed the door upon entry-enroute; it prevented plaintiff from getting to his cell. After said defendants' were done with the compliance check, Plaintiff question defendant ("def.") Blanton about the compliance check and was told about the T.V. being on;

33.) Compliance checks are done on the 7 to 3 shift (1st shift) routinely; because there's nearly no movement; and call passes on/or after 8 a.m leaves no excuse why your room is not in compliance prior thereto. This shakedown was orchestrated to retaliate against Plaintiff ("Pl.") for filing grievances and having won a lawsuit against IDOC officials for damaging my property, where only one side of the living unit was shook-down; (cells 1-27 were not) I was being ▓▓▓▓▓ targeted [Plaintiff.]; (Pl. filed a grievance on the incident and ticket, 5-23-15.)

34.) On May 24, 2015, upon return from the gym at approx. 7:30 p.m, pl. was entering the (Unit 60) corridor area when he was attacked by defendant Brinkmeier who snatch Pl. by the upper-left arm (in an aggressive manner) with both hands; absent provocation of Pl.;

35.) Pl. requested to see a Lt. after the attack; experiencing sharp pains in his shoulder, def. Brinkmeier refused to go get the Lt. and refused to let Pl. see a doctor when he asked for one; the such force was not necessary - at all, because Pl. was not volitale nor did he commit a rule infraction. The attack was a retaliational act against Pl. for filing a grievance against said def. hereinat;

36.) On May 25, 2015, at approx. 12:30 p.m, Pl. - while showering, felt more pain than normal and noticed bruises in his left-arm and shoulder area. Pl. spoke to Lt. Solberg (at approx. 5:00 p.m) that same evening - in Def. Brinkmeier's presence - about the attack; she [Lt.] advised me to file a grievance ("griev.") because she did not witness the situation and, therefore, could not write an incident report on it; Pl. had to attend "sick-call" for pain and **bruises**; At this point, Def. Brinkmeier did not deny grabbing pl.;

37.) On May 26, 2015, Pl. (an "Industry worker") went to work; and because of the pain in his arm/shoulder, his Supervisor ("Supv.") - Jensen called Nurse Peppers (alerting them that pl. was en route) then sent Pl. to the HCU - Health Care; Peppers treated Pl. as an assault patient, then contacted Sgt. McCallister; Def. McCallister took several photos of pl.'s left arm/shoulder, then contacted Maj. Gorman who ultimately had pl. escorted to segregation

("Seg.") under investigative status;

38.) On May 27, 2015, Plaintiff was interviewed by Def. Sage (of Internal Affairs); Pl. provided a detailed statement and gave witnesses (Inmates: Slayton, Robinson, Barnes and Bumpers) to be interviewed regarding the Brinkmeier ~~assault~~; (5/24/15, at approx. 7:30 p.m)

39.) Def. Sage advised Pl. that he [Plaintiff] would be released later that day but before terminating the interview, questioned Pl. about a prior grievance (12/15/14) against Lt. Groharing ("Lt. Grohan") for putting hands on Pl. and making a racial comment while tossing I.d to the floor; Pl. indicated full exhaustion of griev. against Def. Grohan to Def. Sage; This was the first time pl. was interviewed regarding that unrelated incident;

40.) On May 29, 2015, Pl. filed a grievance (while in seg.) complaining about Lt. Sage rerigging on releasing pl. from seg. and requested Pl.'s witnesses be interviewed; Def. Sage tried to use pychological warfare hoping that by telling pl. he would be released (later that day), Pl. would cease pursuit of unrelated griev.; However,

41.) On June 5, 2015, at approx. 1:30 p.m, Def. Sage, in an act of retaliation, botched said investigation ("inves.") against Def. Brinkmeier re: excessive force, and wrote Pl. an IDR for allegedly giving false info. to staff; and, impeding an investigation; However, in the IDR (5/27/15) said Def.'s conclusion, in part, was determined based on witnesses statements;

42.) Some of the witnesses statements were given by persons requested by Pl. who were deemed credible due to consistencies in their statements; yet, according to Def. Sage, statements (in addition) of witnesses obtained during the inves., contradicted info. provided by Pl.; Moreover, a closer look at those same witnesses affidavits/statements (that came later) debunked def. Sage's assertions of false info;

43.) Pl. went before the Adj. Comm. on June 9, 2015, chaired by def. Chavez who immediately started berating Pl. of being an "ambulance chaser"; Pl. asked that his witnesses be called but, was denied in the absence of a valid reason; and was found guilty by this def. based on def. Sage's inves. of alleged confidential informants; not listed in def. Sage IDR; (Pl.'s basis for discipline was re. def.'s IDR)

44.) In nature, Def. Chavez furthered the retaliation against Pl. by conspiring (in a meeting of the minds) with def. Sage to cover up the assault against Pl. by entering an unlawful non-impartial verdict of "Guilty" at hearing on said IDR; So,

45.) On June 25, 2015, Pl. was released from seg. and placed in Unit 31 which recreates with Unit 60 seven (7) days a week; Pl. got the chance to see and/or speak to all of his witnesses who notified him; these witnesses informed Pl. that def. Sage had falsified the IDR brought against Pl.; Also upon release, Pl. discovered DCC staff either destroyed or damaged Pl.'s T.V., headphones, fan and typewriter intentionally; to cause hardship on Pl.; who also lost his job in the industry due to IDR finding of "Guilty" entered by def. Chavez which was spawned by def. (Sage) Lt. Reynolds was the officer whom pl.'s property was given to, def. Reynolds was responsible for pl.'s property;

46.) On June 29, 2015, July 13, 2015, and July 16, 2015, Pl. vigorously pursued a copy of Pl.'s statement and those of witnesses' Robinson, Bumpers, Slayton and Barnes; as well as, photos taken of the bruises suffered; under the Freedom of Information Act (FOIA) but, was denied by Delbert Ford - alleging Pl.'s witnesses were, somehow, Confidential Informants ("CI(s)");

47.) However, the IDR written by def. Sage clearly stated "witnesses provided by Pl.;

48.) On July 31, 2015, Pl. appealed his FOIA denial to the Public Access Counselor (PAC), requesting a copy of the aforementioned documents;

49.) On August 19, 2015, Asst. Atty. Gen. of the Public Access Bureau (PAB), Edie Steinberg; informed IDOC's FOIA Officer (via U.S Mail) to submit two copies of the requested documents (one, version redacted) to Pl., and IDOC refused to do so; Then,

50.) On December 22, 2017, Mr. Steinberg (via U.S. Mail) advised Pl. that their office had closed the file on Pl.'s request, without any regards for his appellate procedure or any other course of action taken on behalf of Pl.;

51.) On June 25, 2015, Pl. filed a griev. on the destruction of said audio-

visual appliances, etc., and was reimbursed for the T.v. only; his headphones were destroyed (absent Pl.'s consent) - in retaliation; during the pendency of said grievance, in which the notice of destruction came Sept. 8, 2015;

52.) On July 27, 2015, Pl. filed a griev. (griev. no. 15-8-20) and attached affidavits from the following inmates:

     (i) Barnes;
     (ii) Slayton;
     (iii) Bumpers; and,
     (iv) Robinson;

all attesting to seeing or hearing C/O, Brinkmeier grab Pl. by his arm. Despite those affidavits, no one from Def. DCC or Def. ARB conducted an investigation or interviewed Pl.'s witnesses.

53.) It is clear from the documents presented, that Def. Sage fabricated the IDR against Pl. and Def.'s IDOC, Baldwin, ARB, Krbauer, and Martens conspired to either turn a blind eye or cover-up those facts by not investigating thoroughly. Def's DCC and Enloe had reason to know Def.'s Brinkmeier and Sage were operating outside the Rules of Conduct; applying atypical and significant hardship upon Pl. in an ordinary incident of prison life.

54.) Pl. was irrated by Def. Martens' mishandling of, previous griev.'s (5/24/2015 and 5/29/2015) not responded to, and filed an emergency

griev. on said def.'s conduct Sept. 9, 2015 to Def. Enloe who deemed it a non-emergency. Def.'s Martens and Enloe conspired to impede upon Pl.'s right to seek redress by failing to address Pl.'s issues after significant time has elapsed (Def. Martens); and deeming the griev. non-emergency after have knowledge of previous set backs on prior griev's (Def. Enloe).

55.) On July 8, 2016 (again) Pl. was retaliated against by internal affairs who shook down Pl.'s excess legal boxes (in storage); and, lost or discarded Pl.'s trial records, medical records and trial exhibits outside of Pl.'s presence. As a result thereof,

56.) On July 13, 2016, an IDR was written against Pl. for allegedly storing contraband; On July 19, 2016, Pl. heard the IDR and was found guilty of the charge; And,

57.) Although Pl. filed a grievance Aug. 7, 2016, Def.'s DCC or ARB did not do a meaningful investigation; Yet, said Def.'s refused to reimburst Pl. for property loss, claiming his issue is unsubstantiated.

58.) On July 9, 2016, it was discovered by Law Librarian Sally J. and c/o Herrmann that legal documents had been discarded all over the general library floor after Internal Affairs ("I.A") shookdown Pl.'s boxes. Incident reports were written detailing the above conduct.

59.) On Aug. 4, **2016**, Pl. requested access to legal boxes; and on Aug. 8, **2016**, Pl. discovered the aforementioned documents were missing from said boxes. So,

60.) On Aug. 18, **2016**, Pl. filed an "emergency" griev. (griev. no. 16-8-300) requesting an investigation and reimbursement of lost documents/records. Def.'s Dixon C.C (DCC), IDOC, (or) ARB; neglected their duties to inquire into the matter.

61.) On August 9, 2017, Pl. mailed out a complaint to the IL Court of Claims regarding said misconduct and destruction of property from July 8, 2016. But, the suit was filed **Aug. 20**, 2017.

62.) On Aug. 22, 2017, Pl. appealed griev. no. 17-7-15, involving Dixon's Administration and staff threatening Pl.'s witnesses on a prior griev.; at this time, Def. Brinkmeier had been promoted to I.A.; so, these witnesses were told that if they corroborated Pl.'s accounts, they would be targeted by staff just as Pl. would be the target of (now) I.A., Def. Brinkmeier;

63.) It was known that griev. (no. 17-7-15) was being sent to Def. ARB; by Def. DCC and it's staff, on Aug. 22, 2017; just as said Def.'s knew of the lawsuit sent 2 weeks from said date previously mentioned above; so, Pl. was moved from his living quarters, in retaliation, and Pl. prepared a griev. on the matter. So;

64.) On Sept. 7, 2017, pl. filed griev. complaining of his move from "Place to Place" was in retaliation for exercising his constitutional rights;

65.) On Sept. 22, 2017, Pl. was placed under investigation for a "Sexual Misconduct" charge (·107 offense) by I.A Lt. (Craft, #3042). Three days later,

66.) On Sept. 25, 2017, Pl. was interviewed by defendants' Gee and Manzano, who could not articulate any facts relating to Pl.; so, that rendered their investigation moot; which was just another form of retaliation; and that pl. had so many grievances on how def.'s unlawfully invaded pl.'s property; def. Manzano tried to get pl. to drop griev. against def. Brinkmeier by stating if pl. did not do so, defs. (Manzano and Gee) would make his prison stay tough; which led to the interview switching over to pl.'s property that produced the foregoing false IDR (9/26/17) whereas he lost good-time, once he failed to adhere to said defs. request.

67.) On Sept. 26, 2017, the above named def.'s, acting through others of def. SCC, retaliated against him by producing a falsified IDR (9/26/17); by which def. Remmerse, in bad faith, found him guilty for a charge unrelated to what he was initially put under investigation for; whereas, the unrelated IDR replaced the investigative ticket; Pl. responded by griev. (10/17/2017) once found guilty;

68.) Def. Martens and Def. Enloe, in re. to griev. 15-8-20 (number) Pl. grieved to their office, conspired to cover up their lack of investigation of excessive force (against Def. Brinkmeier) that was made to the Health Care Unit (HCU) by Pl., who suffered injuries;

by issuing their initial response, Aug. 24, 2015, basing their decision on fellow Administrative Staff members' investigative findings without doing one - independent - of their own; But, doubled back nearly two months later (10-21-15) to amend their decision to reflect as though they have did an investigation of their own; which was untimely, and false.

69.) Defendants' Martens and Enloe, routinely, failed to base their decisions of Pl.'s plentiful griev.'s filed in this foregoing complaint; on their "independent" findings supported by some evidence of reliability, as an alleged impartial panel; acting in bad faith.

70.) Def. Lahr failed to properly investigate griev. no. 17-7-15. Pl. did not grieve a rumor, he grieved the intimidation of his witnesses by staff and gave a summary of it's nature. Had this defendant conducted interviews with the named inmates in the griev. she would have learned the grievance was'nt rumor based. Part of this Def.'s job description is to compel attendence of witnesses for investigative purposes. And just because Pl. failed to attach copies of the griev. response, does not negate her duties to access all papers and documents associated to the Department. That is a part of investigating. Def. Lahr, in bad faith, failed to sufficiently perform her ministral duties.

71.) Def.'s ARB and Lahr failed to address Pl.'s griev. no. 17-9-94, due to their office being in receipt of said griev. Beyond the 30 days from

the date the CAO (Def. Enloe) signed off on the griev.; yet, Pl. sent said griev. to ARB, within 30 days of Def. Enloe's signature via institutional mailing procedures (cellhouse/mailbox pick-up by staff). So, if there was a delay, it was through no fault of his own, where he is not responsible for the mail once he has executed such through proper institutional procedures; absent an investigation to determine whether or not Pl. was at fault, said Def.'s neglected their duties and placed fault on Pl. by expressed implications (i.e, refusing to address issue any further);

72.) Def. Greer failed to sufficiently perform his duties to the best of his abilities in re: to griev. no. 14-12-131. Pl. also submitted to Def.'s ARB a copy of his un-responsive griev. (no. 14-12-131), and explained that Def. DCC's Administrative staff was beyond the timeframe for responding to said griev.; and asked Def. ARB to decide Pl.'s griev. Def. ARB forwarded Pl.'s filings to Def. Greer for completion;

73.) Def. Greer neglected his duties to investigate **grievance** no. 14-12-131 stating he wanted the responses to said grievance in addition; and returned Pl.'s filings on Feb. 25, 2015. Part of Def.'s job description is to compel attendence for investigative purposes, and to have access, at anytime, to all papers, documents and records of the department. So, Pl.'s failure to attach such documents, did not negate the exercising of said Def.'s ministral duties. Had this Def. done so, def. would have saw Def. DCC's Administration did not provide Pl. with a response, and did not provide a timely response to said griev;

74.) Def.'s ARB, Lahr and Greer, in bad faith, failed to sufficiently perform their ministral duties, as prescribed by state-law; And,

75.) as applied to all, applicable, griev.'s filed herein at complaint.

76.) Def. Baldwin, in bad faith, failed to sufficiently investigate the griev.'s filed by Pl.; and failed to review def.'s ARB, Lahr, and Greer's findings for failure to comply with Departmental Rules and due process safeguards that are afforded to Pl.; Def. Baldwin, absent proper justification or comments, concurred with said def.'s findings, as applied to all said applicable griev.'s filed above; and negated the powers and duties of his position, in parts, as prescribed by law.

77.) Def.'s Adj. Comm.-DCC, Chavez, Remmerse, Whitely and Enloe; and, Def.'s Baldwin, Greer, Lahr, Knauer; all, have imposed atypical and significant hardship upon pl. in a ordinary incident of prison life by placing a restraint upon his state-created liberty interest in remaining free from an Adjustment Committee and/or employees imposing an imposition of disciplinary action to be recommended for a violation of def. IDOC's descriptive rules and rules of behavior without supporting its findings with some evidence; in re. to griev. no.'s: 15-6-165, and 15-8-20;

78.) And incident report no.'s 2015029168/1, 2015032180/1-Dix and 2017067129/1 -Dix to IDR's, Def.'s Adj. Comm.-DCC, Chavez, Remmerse, Whitely and Enloe failed to:

(a.) provide an adequate basis for decision;

(b.) provide a reason for disregarding exonerating evidence; and,

(c.) provide a reason for imposing discipline; (§ 504.80 (l)(1) through (3))

(d) find that the offender did not commit the offense based upon all relevant information and evidence; (§ 504.80 (j) through (K)(1))

(e.) Review all adjustment committee dispositions and overturn the recommendation based on **procedural** due process violations; (§ 504.80 (p) and (p)(1)(C) )

(f) Remand the decision to the Adjustment Committee for new proceedings if the proceedings are found to be defective due to:

    (i) Lack of impartiality of the Adjustment Committee; or

    (ii) Improper exclusion of witnesses; (§ 504.90 (a)(2) and (3))

(g) Remand the decision to the Adjustment Committee for

correction of summary, including:

the basis for the finding of guilt and
imposition of sanctions; (§ 504.90 (c))

79.) Said def.'s, in bad faith, failed to sufficiently perform their ministral duties, as prescribed by state-law.

80.) Def. Baldwin, as applied to above para.'s 77-78, failed to comply with provisions (e) through (g) of para. 78. This defendant, in bad faith, failed to sufficiently perform his ministral duties, as pre-scribed by state-law.

81.) In regards to the aforementioned chain of events (above), Pl. gave notice to agency head Def. Govenor Bruce Rauner ("Rauner") via letter ("Certified") through U.S Mail Dec. 11, 2017 detailing all said defendants' conduct, in bad faith, failing to sufficiently perform their ministral duties prescribed for each officers position, by state-law; and asked that this def. rectify the situation;

82.) Def. Rauner responded with a reply (response) letter to Def. Enloe (or, his successor), who was apart of the subject matter at hand; to look into said issue. Def. Enloe supplied an inaccurate investigative report which absolved him of no wrongdoing or fault; and pushed everything on Pl.'s failure to exhaust remedial procedures so to speak; in that Pl. received a copy of said report. As followed,

83.) Pl. wrote another letter ("Certified") to Def. Rauner, explaining the misinformation of the responsive investigative report issued by Def. Enloe (or his successor); and provided supporting information (to the contrary) to Def. Rauner, in support of Pl.'s position and ask Def. Rauner to investigate the matter. As to date (9/1/2018), no response has been supplied, though Pl. issued second inquiry on Jan. 17, 2018;

84.) Pl. grew frustrated over the lack of responses and the schematic negligence and official misconduct in retaliation for the exercising of Pl.'s right to petition for redress of griev.'s; and wrote Def. ISP-Director on 6 seperate occassions (7-1-15; 7-16-15; 8-4-15; 1-6-17; 7-24-17; and, 1-29-18) over the course of a three (3) year span; which has yielded no responses to date (9/1/2018); Both def.'s Rauner and ISP-Director are conservators of peace who job description entails them to serve and protect the welfare of the public, as well as persons adjudicated as offenders; Said def.'s have failed, in part, to perform their duties as prescribed by state-law; regarding their investigative powers associated to the aforementioned paragraphs above.

85.) Pl. states that, in this case, the grant of relief will service the public intrest because it is always in the interest for prison officials to obey the law, especially the construction.

86.) Irreparable harm will result if the injunction is not granted.

# STATEMENT OF CLAIMS

COUNT 1: Failure to intervene – 42 U.S.C § 1983 ( ALL DEFENDANTS )

87.) Pl. reallege and incorporate by reference paragraphs 1 – 87.

88.) The actions of the Defendants' constituted unreasonable, cruel and unusual punishment against Pl., thus violating his rights under the eighth amendment to the U.S. Constitution and § 1983.

89.) As a proximate result of the above-detailed actions of Def.'s, Pl.'s injury caused him to suffer severe pain, physical injury, mental suffering, anguish, humiliation and fear;

WHEREFORE, pursuant to 42 U.S.C § 1983, Plaintiff demands judgment against Defendants for compensatory damages, punitive damages, the cost of this action and attorney's fees, and any such other and further relief this Court deems equitable and just.

COUNT II: First Amendment - Solitary Confinement violates constitutional and Civil Rights Pursuant to Title 42 U.S.C § 1983 (Defendants DCC, Enloe, Adj. Comm. - DCC, Chavez. and Whitely, Remmerse )

90.) Plaintiff realleges the above paragraphs as though fully set forth herein.

91.) Plaintiff realleges each of the foregoing paragraphs as if fully set forth herein.

92.) Isolated confinement invades the sphere of the intellect and the spirit. It imposes serious injury to future health and safety.

93.) Plaintiff's placement into disciplinary confinement (solitary), and the actions of defendants', respectively; constituted cruel and unusual punishment. And in disallowing, impeding or interferring with plaintiff's right to petition for redress of grievance; and, to exercise presence of mind to ask for mental health assistance; thus, violating his rights under the first amendment of the U.S. Constitution!

94.) Defendants' may not, consistently within the spirit of the first amendment, contract the spectrum of available knowledge. The right of freedom of speech and press includes not only the right to utter or to print, but the right to distribute, the right to receive, the right to read, and freedom of inquiry; freedom of thought.

95.) Plaintiff has a right to seek administrative redress of grievance and the issues in this complaint, strike at the core of the first Amendments right to receive, to read, and to think.

96.) As a direct and proximate result of defendants' actions, Plaintiff's rights were violated, and he suffered damages, severe emotional distress, anguish and deprivation of his liberty resulting from solitary confinement, as is more fully alleged above.

97.) The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of Plaintiff.

98.) As a proximate result of the above-detailed actions of defendants, Plaintiff was injured, including severe pain, physical injury, mental suffering, humiliation and fear.

99.) WHEREFORE, pursuant to 42 U.S.C § 1983, Plaintiff demands judgment against Defendants for compensatory damages, punitive damages, the cost of this action and attorney fees, and any such other and further relief as this Court deems equitable, just and proper.

COUNT III : Fourth Amendment - Unreasonable Search and Seizure (Defendants' DCC, Enloe', Adj. Comm.-DCC, Chavez and Whitely, Manzano, Gee, Remmerse, Reynolds )

100.) Plaintiff reallege and incorporate by reference paragraphs **1-100**.

101.) Under 42 U.S.C § 1983, a person who, acting under color of law, deprive another person of his federal constitutional rights is liable to the injured party.

102.) The Fourth Amendment to the United States Constitution, enforceable pursuant to 42 U.S.C § 1983, protects against unreasonable search and seizure. Defendants' illegal conduct violated Plaintiff's rights.

103.) As a direct and proximate result of Defendants constitutional deprivation, Plaintiff suffered significant emotional injuries including mental and emotional damage and trauma, humiliation, loss of liberty, mental distress and anguish as alleged in this Complaint and are entitled to relief under 42 U.S.C § 1983.

WHEREFORE, pursuant to 42 U.S.C § 1983, Plaintiff demands judgment against the individual defendants jointly and severally for compensatory damages against Defendants and because these Defendants acted maliciously, wantonly, or oppressively, punitive damages, plus the costs of this action and attorney's fees, and such other and additional relief as this court deems equitable and just.

COUNT IV.: Eighth Amendment- Cruel and Unusual Punishment, Deliberate Indifference to Medical Needs (Defendants' Rauner, Baldwin, ARB, Lahr, Knauer, Greer, Enloe, Blanton, Sage, McCallister, Chavez, Whitely, Remmerse, Brinkmeier, Adj. Comm.-DCC, Grohan, Martens, ISP-Director, Manzano, Gee and Reynolds )

104.) Plaintiff realleges and reincorporates all previous paragraphs.

105.) Plaintiff realleges each of the foregoing paragraphs as if fully set forth herein.

106.) Under 42 U.S.C § 1983, a person who, acting under color of state-law, deprive another person of his federal constitutional rights is liable to the injured party.

107.) The Eighth Amendment to the U.S. Constitution, enforceable pursuant to 42 U.S.C § 1983, protects against cruel and unusual punishment, retaliation, deliberate indifference to medical needs. Defendants' illegal conduct violated his right to be safe and attended to.

108.) As a direct and proximate result of Defendants' constitutional deprivation, Plaintiff suffered significant emotional injuries including mental and emotional damage and trauma, humiliation, loss of liberty, mental distress and anguish, which will have a serious effect on him in the future.

109.) WHEREFORE, pursuant to 42 U.S.C § 1983, Plaintiff demands judgment against the individual defendants jointly and severally for compensatory damages against Defendants and because these Defendants acted maliciously, wantonly, or oppressively, punitive damages, plus the costs of this action and Attorney's fees, and such other and additional relief as this court deems equitable and just.

COUNT V.: Fourteenth Amendment - Due Process, Liberty Interest Violation (Defendants' Rauner, Baldwin, ISP-Director, ARB, Bahr, Knauer, Greer, Enloe, Martens, Adj. Comm.-DOT, Chavez, Whitely, Blanton, Sage, Grohan, McCallister and Brinkmeier, Manzano, Remmerse, Gee and Reynolds )

110.) Plaintiff reincorporates and re-alleges all previous paragraphs.

111.) Plaintiff realleges each of the foregoing paragraphs as if fully set forth herein.

112.) Under 42 U.S.C § 1983, a person who, acting under color of state-law, deprive another person of his federal constitutional rights is liable to the injured party.

113.) As a direct and proximate result of Defendants constitutional deprivation, Plaintiff suffered ongoing severe pain and physical injuries. In addition, Plaintiff suffered significant emotional injuries including mental and emotional damage and trauma, humiliation, loss of liberty, mental distress and anguish, and is entitled to relief under 42 U.S.C § 1983.

WHEREFORE, pursuant to 42 USC § 1983, Plaintiff demands judgment against the individual defendants jointly and severally for compensatory damages against defendant officers, and municipalities because these defendants' acted maliciously, wantonly, or oppressively, Punitive damages, plus the cost of this action and attorney's fees, and such other and additional relief as this Court deems just and equitable.

COUNT VI.: 42 U.S.C § 1983 - Conspiracy to deny Due Process (Defendants Rauner, Baldwin, ISP-Director, ARB, Lahti, Knader, Greer, Enloe, Martens, Adj. Comm.-DCC, Chavez, Whitely, Blanton, Sage, Grohan, McCallister, and Remmerse, Reynolds, Gee, Brinkmeier, Marizano, Reynolds, Remmerse, Gee)

114.) Plaintiff realleges the above paragraphs as though fully set forth herein.

115.) Plaintiff realleges each of the foregoing paragraphs as though fully set forth herein.

116.) Each of the co-conspirators committed overt acts and was an otherwise willful participant in joint activity.

117.) The misconduct described in this Court was undertaken with malice, willfulness, and reckless indifference to the rights of Plaintiff.

118.) As a direct and proximate result of the ellicit practice and prior agreement referenced above, Plaintiff's rights were violated, and he suffered damages, severe emotional distress and anguish, and deprivation of his liberty, as is more fully alleged above.

119.) As a proximate result of the above-detailed actions of Defendants, Plaintiff was injured, including severe pain, physical injury, mental suffering, anguish and humiliation, and fear.

WHEREFORE, pursuant to 42 U.S.C § 1983, Plaintiff demands judgment against Defendants for compensatory damages, punitive damages, the cost of this action and attorney's fees, and any such other and further relief as this Court deems equitable and just.

COUNT VII.: Intentional Infliction of Emotional Distress (Defendants' Rauner, Baldwin, ISP-Director, ARB, Lahr, Knauer, Greer, Enloe, Martens, Adj. Comm. - DCC, Chavez, Whitely, Blanton, Sage, McCallister, Grohan, and Brinkmeier, Manzano, Reynolds, Remmerse and Gee )

120.) Plaintiff reallege and reincorporates all previous paragraphs.

121.) Defendants' actions, under state-law [color], as set forth above, were extreme and outrageous.

122.) Defendants' intended to maliciously and willfuly cause, and were in reck-less disregard to the probability that their conduct would cause, severe emotional distress to plaintiff; and would undoubtedly effect him post-incarceration.

123.) Said actions/inactions and conduct did directly and proximately cause Plaintiff to suffer severe emotional distress.

124.) As a direct and proximate result of Defendants' intentional infliction of emotional distress, Plaintiff suffered significant emotional injuries including mental and emotional damage and trauma, humiliation, damage to his personal reputation, loss of liberty, mental distress and anguish as alleged in this Complaint.

125.) WHEREFORE, Plaintiff demands judgment against individual defendants and because these Defendants' acted maliciously, wantonly, or oppress-ively, punitive damages, plus the costs of this action and any other and additional relief this Court deems just, proper, and equitable.

COUNT VIII : State-Claim-Deriliction of Duty (Defendants' Rauner, Baldwin, ISP-Director, ARB, Lahr, Knauer, Greer, Enloe, Martens, Adj. Comm. -DCC, Sage, Chavez, Whitely, Blanton, Grohan, McCallister, and Brinkmeier)

126.) Plaintiff realleges the above paragraphs as though fully set forth herein.

127.) In committing the alleged acts, Defendant officers' were elected officials of the State of Illinois, members and/or agents of, either or, IDOC, and the

ARB, acting at all times relevant, within the scope of their employment.

128.) As a direct and proximate result of Defendants' wrongful and intentional actions and/or inactions, Plaintiff suffered significant emotional injuries including mental and emotional damage and trauma, humiliation, loss of liberty, mental and emotional distress and anguish as alleged in this complaint.

WHEREFORE, Plaintiff demands judgment against individual defendants jointly and severally for punitive damages because these defendant officers acted maliciously with intent, wantonly, or oppressively; plus the cost of this action and attorney's fees and such other and additional relief as this Court deems equitable and just.

COUNT IX.: State Claim-Respondeat Superior (Defendants' Rauner, Baldwin and ISP-Director)

129.) Plaintiff reallege and reincorporates all previous paragraphs.

130.) In committing the alleged acts, Defendant officers were members and agents of the ARB, IDOC; and an elected official of the State of Illinois, acting at all times relevant, within the scope of their employment.

131.) Defendant ISP-Director, Rauner and Baldwin, is organized under the State of Illinois. In Illinois, public entities are directed to pay for any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities under 735 ILCS 10/9-102.

132.) As a direct and proximate result of Defendants' wrongful actions, Plaintiff suffered significant emotional injuries including mental and emotional damage and trauma, humiliation, loss of liberty, mental and emotional distress and anguish as alleged in this complaint.

133.) WHEREFORE, Plaintiff demands judgment against individual defendants jointly and severally for compensatory damages against Defendants and because these defendants' officers' acted maliciously, wantonly, or oppressively, punitive damages, plus the costs of this action and attorney's fees and such other and additional relief as this Court deems equitable and just.

COUNT X: Idemnification Claim (IDOC, ISP, ARB [Defendants'])

134.) Plaintiff reallege and reincorporates all previous paragraphs as though fully set forth herein.

135.) A Plaintiff may bring an idemnification claim against a municipality in a section 1983 suit under 735 (or) 745 ILCS 10/9-102.

136.) In committing the alleged acts, Defendants' were elected officials of the State of Illinois, members and agents of IDOC, ARB and ISP, and their actions were incident to the service of employment with IDOC, ARB and ISP.

137.) As a direct and proximate result of Defendants unconstitutional actions, Plaintiff's ongoing severe pain and physical injuries caused him to suffer.

In addition, Plaintiff suffered significant emotional injuries including mental and emotional damages and trauma, humiliation, loss of liberty, mental distress and anguish as alleged in this complaint and is entitled to relief under 42 U.S.C §.

WHEREFORE, as a result of Defendant - Officers unconstitutional actions, Plaintiff requests compensatory and punitive damages in an amount deemed at the time of trial to be just, fair, and appropriate.

WHEREFORE, as a result of Defendant officers malicious, willful and indifferent deprivation of Plaintiff's constitutional rights and their reckless disregard in the face of their legal duty to Plaintiff, Leonard Logan suffered severe pain, significant injuries, significant emotional injuries including mental and emotional damage and trauma, humiliation, loss of liberty, mental distress and anguish. Therefore, he requests compensatory and punitive damages in an amount deemed at the time of trial to be just, fair, and appropriate.

138.) Jury Trial Demanded.

139.) Plaintiff has no plain, adequate or complete remedy at law to redress the wrongs described herein. Plaintiff has been and will continue to be irreparably injured by the conduct of the defendants unless this Court grants declaratory and injunctive relief which plaintiff seeks.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this court enter judgment granting plaintiff:

140.) A declaration that the acts and ommissions described herein violated plaintiff's rights under the Constitution and Laws of the United States.

141.) A preliminary and permanent injunction ordering defendants' Rauner, IDOC, John R. Baldwin, ARB, Ann Lahr, Debbie Knauer, DCC, Donald Enloe, Deborah Whitely, Raphael E. Chavez, Adj. Comm.-DCC, Groharing, Blanton # 10796, Merl T. Sage #8227, McCallister, Colin S. Brinkmeier #4203, James Martens, Billie W. Greer, ISP-Director, to: cease and desist any harrassment, retaliations, shakedowns of any kind symbolic of this order; refrain from the acts and ommissions entered upon the declaratory order and injunction this case is founded upon, whereas, any failure to comply of any sort shall result in sanctions holding: defendants and successors in office, agents and employees and all other persons acting in concert and participation with them to be: (i) Demoted in rank, not to assume such title/rank or higher, for 15 years, 10 years if, sensitivity and paralegal courses are fully completed; (ii) fined $2,500.00, hence payment to be effective immediately; garnishment of wages to take course in the alternative; ea. day this order is violated; and, (iii) found in violation of 720 ILCS 5/33-3 (Official Misconduct); defendants and successors in office, agents and employees and all other persons acting in concert and participation with them to: vacate all disciplinary reports, investigative reports and Adjustment Committee Summary Reports from Inmate Leonard Logan's Master file as it is to reflect "None", and is more prejudicial than probative and stems from Plaintiff's Due Process violation.

142.) Under the following Count(s):

(1.) Compensatory damages in the amount of $75,000.00 against ea. defendant, jointly and severally; Punitive damages in the amount of $45,000.00 against ea. defendant jointly and severally;

(2.) Compensatory damages in the amount of $350.00 per month of loss of prior institutional assignment against ea. defendant, jointly and severally; Punitive damages in the amount of $45,000.00 against ea. defendant jointly and severally;

(3.) Compensatory damages in the amount of $100,000.00 against ea. defendant, jointly and severally; Punitive damages in the amount of $75,000.00 against ea. defendant jointly and severally;

(4.) Compensatory damages in the amount of $250.00 ea. day held under investigation and/or disciplinary segregation against ea. defendant, jointly and severally; Punitive damages in the amount of $25,000.00 against ea. defendant jointly and severally;

(4.) Compensatory damages in the amount of $45,000.00 for claims pursuant to Fed. R. Civ. P Rule 20 against ea. defendant, jointly and severally; Punitive damages in the amount of $75,000.00 against ea. defendant, jointly and severally;

(4) Compensatory damages in the amount of $100,000.00 for retaliation against ea. defendant jointly and severally; Punitive damages in the amount of $45,000.00 (against ea. defendant jointly and severally;

(4.) Compensatory damages in the amount of $250,000.00 for deliberate indifference to medical needs against ea. defendant, jointly and severally; Punitive damages in the amount of $100,000.00 against ea. defendant, jointly and severally;

(5.) Compensatory damages in the amount of $25,000.00 for liberty restrictions for time spent in segregation and thereafter, against ea. defendant jointly and severally; Punitive damages in the amount of $2,500.00 ea. day against ea. defendant, jointly and severally;

(5.) Compensatory damages in the amount of $75,000.00 for due process viol. against ea. defendant jointly and severally; Punitive damages in the amount of $50,000.00 against ea. defendant, jointly and severally;

(6,7,8,9.) Compensatory damages in the amount of $100,000.00 ea. count against ea. defendant, jointly and severally; Punitive damages in the amount of $50,000.00 ea. count against ea. defendant, jointly and severally;

(10.) Compensatory damages in the amount of $50,000.00

against ea. defendant, jointly and severally; Punitive damages in the amount of $25,000.00 against ea. defendant, jointly and severally.

143.) Attorney's fees under all counts triable, in the amount of $15,000.00.

144.) Plaintiff's cost in this suit.

145.) Each defendant is being sued in their individual and official capacity.

146.) A jury trial on all issues triable by jury.

147.) Any additional relief this court deems, just, proper, and equitable.

Date: 11-9-18

Respectfully submitted,

Leonard

Leonard Logan, # R11048
R.R 2 Box 36,
10930 Lawrence Rd.
Sumner, Il. 62466

OFFICIAL SEAL
SHARON L. BURTCH
Notary Public - State of Illinois
My Commission Expires 12/11/2019

Subscribed and Sworn to Before me this
9 Day of November, 2018

Sharon L Burtch
Notary Public

STATE OF ILLINOIS } SS
COUNTY OF LAWRENCE }

## AFFIDAVIT

I, Leonard Logan, being duly sworn, attest to the following : I am the Plaintiff in the attached foregoing 42 U.S.C § 1983 Plaintiff's first amended complaint; and, reallege and incorporate paragraphs 1 - 147 of said complaint as if fully set forth herein.

Plaintiff received assistance from Corky Terry (#R08315) who studied the facts with plaintiff and put this complaint together for the plaintiff in good faith.

Signed on this 9 day of November, 2018.

/S/ Leonard

Leonard Logan.

SWORN TO BEFORE ME
ON THIS 9 day of
November, 2018,

Sharon L Burtch
   Notary Public.

OFFICIAL SEAL
SHARON L. BURTCH
Notary Public - State of Illinois
My Commission Expires 12/11/2019

(1 of 2)

Signed on this ___ day of November 2018.

/s/ _____

Corky Terry

OFFICIAL SEAL
SHARON L. BURTCH
Notary Public - State of Illinois
My Commission Expires 12/11/2019

(I am the aforementioned name and
number mentioned by Mr. Logan (above)
who prepared his complaint

SWORN TO BEFORE ME
ON THIS 8 day of
November , 2018,

_____
Notary Public

(2 of 2)