**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| LEONARD LOGAN, | )<br>) |
| Plaintiff, | ) Case No. 18-CV-6874<br>) |
| v. | )<br>) |
| WARDEN JOHN VARGA, WARDEN DONALD ENLOE, LT. GROHAN, C/O JAMES MARTENS, C/O BRINKMEIER, LT. BLANTON, LT. MERL SAGE, C/O RAPHAEL CHAVEZ, C/O REMMERSE, C/O DEBORAH WHITLEY, C/O REYNOLDS, C/O MAZANO, C/O NEWMAN, C/O GEE, and unknown employees of the Illinois Department of Corrections, | )<br>)<br>)<br>)<br>)<br>) Judge Reinhard<br>)<br>) Mag. Judge Johnston<br>)<br>)<br>) JURY TRIAL DEMANDED |
| Defendants. | ) |

## SECOND AMENDED COMPLAINT

NOW COMES Plaintiff, LEONARD LOGAN, by his attorneys, LOEVY & LOEVY, and complaining of Defendants, WARDEN JOHN VARGA, WARDEN DONALD ENLOE, LT. GROHAN, C/O JAMES MARTENS, C/O BRINKMEIER, LT. BLANTON, LT. MERL SAGE, C/O RAPHAEL CHAVEZ, C/O REMMERSE, C/O DEBORAH WHITLEY, C/O REYNOLDS, C/O MAZANO, C/O NEWMAN, C/O GEE, and unknown employees of the Illinois Department of Corrections, states as follows:

### Introduction

1. As an inmate in the Illinois Department of Corrections (hereinafter "IDOC"), Plaintiff Leonard Logan has spoken out against injustice where he has witnessed them. He has used the IDOC grievance system and by extension the Illinois Court of Claims to make

appropriate complaints through the proper channels in order to speak out so that his constitutional rights, and those of other inmates, remain protected.

2.  Defendants did not appreciate Mr. Logan's use of the grievance system and his use of the Court of Claims. They resented his advocacy on his own behalf and on behalf of others, and they sought to make an example of him. Through individual action and in conspiracy with one another, they retaliated against him and sought to deter his right to free speech by attacking him, initiating false disciplinary proceedings against him, and causing him other harms. This action is brought pursuant to 42 U.S.C. Section 1983 to redress the deprivation under color of law of Plaintiff's rights as secured by the United States Constitution.

## Jurisdiction and Venue

3.  This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1367.

4.  Venue is proper under 28 U.S.C. § 1391(b) and (c). On information and belief, all parties reside in this judicial district, and the events giving rise to the claims asserted herein all occurred within this district.

## The Parties

5.  Plaintiff Leonard Logan is currently incarcerated on a court writ at the Northern Reception and Classification Center in Joliet, Illinois. He expect to return shortly to reside at Lawrence Correctional Center.

6.  At the time of the events at issue in this case, Mr. Logan was incarcerated at Dixon Correctional Center ("Dixon") in Dixon, Illinois.

7.  Dixon Correctional Center is operated by the Illinois Department of Corrections ("IDOC").

8. At all times relevant to the events at issue in this case, Defendants John Varga and Donald Enloe were employed as Wardens at Dixon Correctional Center. As such, Defendants Varga and Enloe are sued in their individual and official capacities as Wardens of Dixon Correctional Center.

9. At all times relevant to the events at issue in this case, Defendants Grohan, Brinkmeier, Blanton, Sage, Chavez, Remmerse, Whitley, Reynolds, Mazano, Newman, Gee, and unnamed employees of the Illinois Department of Corrections, were employed by the IDOC and worked at Dixon Correctional Center as Correctional Officers. Defendants Grohan, Sage and Blanton held the rank of Lieutenant. As such, Defendants Grohan, Brinkmeier, Blanton, Sage, Chavez, Remmerse, Whitley, Enloe, Mazano, Newman, Gee and unknown employees of the Illinois Department of Corrections were acting under color of law.

10. At all times relevant to the events at issue in this case, Defendant Martens was a Correction Counselor in the Illinois Department of Corrections, was employed by the IDOC and worked at Dixon Correctional Center. As such, he was acting under color of law.

**Factual Background**

11. Plaintiff Leonard Logan is 46 years old. For a large period of time in his sentence he served time at Dixon Correctional Center. He worked at the prison industry at Dixon Correctional Center, a job that was very important to him as a person who wanted to improve his life as best he could during his time in IDOC.

12. Plaintiff Leonard Logan is a person who stands up to injustice. He has used the prison grievance process to advocate for himself and for other inmates and to speak up about prison abuses and poor prison conditions he has observed during his time in the Illinois Department of Corrections.

13. Plaintiff developed a reputation at Dixon Correctional Center as a person who understood the grievance process and used that process, where appropriate, to speak out.

14. As a result of this reputation, certain staffers at Dixon Correctional Center, including Defendants, developed a dislike of Mr. Logan.

15. On December 12, 2014, Plaintiff and the Illinois Attorney General reached a settlement agreement in the Illinois Courts of Claims, Case No. 14-CC-1503, a case that raised Plaintiff's prior grievance that Dixon Correctional Center staff had improperly destroyed his television set.

16. This settlement as well as Plaintiff's reputation created animus against Plaintiff. As a result of Defendants' animus toward Plaintiff and their belief that Mr. Logan should not speak out about prison conditions and injustice at Dixon Correctional Center, they resolved to punish and retaliate against him.

17. Defendants also had knowledge that other Defendants were retaliating against Plaintiff in the manner described below, but despite having knowledge of that retaliation, failed to do anything about it.

18. In this, way Defendants were successfully able to retaliate against Plaintiff in the following ways:

**December 15, 2014 Dining Hall Incident**

19. On December 15, 2014 on or about 12:00 p.m., Plaintiff was escorted into the south side of the Dixon Correctional Center dining hall with others from Units 58 and 60. At that time, Defendant Grohan approached Plaintiff and deliberately walked into Plaintiff's path as Plaintiff was walking as instructed by other IDOC staff. As Plaintiff tried to sit down, Defendant Grohan shoved his hand into Plaintiff's left shoulder and reached for Plaintiff's identification

card clipped to his clothing. Defendant then pushed passed Plaintiff, walked toward the ID scanner, scanned Plaintiff's identification card, and threw it on the floor. Defendant Grohan then walked back toward where Plaintiff was standing and made the following derogatory comment toward Plaintiff: "Nigger, now you get the idea."

20. Defendant Grohan's conduct was completely unprovoked, and at no relevant time before Defendant Grohan shoved Plaintiff, Plaintiff was not violating any IDOC rules.

21. After Defendant Grohan treated Plaintiff in this matter, Plaintiff asked for an incident report, as would be appropriate under IDOC policy. Instead of providing an incident report, Defendant Grohan threatened Plaintiff with words to the effect that he needed to pick up his ID and sit down, "or else."

22. Other dining hall inmates witnessed this exchange.

23. Plaintiff prepared and processed a grievance on Defendant Grohan's actions following IDOC and Dixon Correctional Center rules. He requested Defendant Grohan be charged for his use of physical force and for the racial slur that he used while physically assaulting Plaintiff.

24. Defendant Martens denied Plaintiff's grievance, falsely claiming that he interviewed the witnessed Plaintiff identified to this event and that their statements were inconsistent with Plaintiff's grievance. Defendant Enloe concurred with Defendant Martens' finding. Both Defendants were motivated to provide these conclusions not based on an honest investigation, but because, despite knowing that Plaintiff's grievance had merit, they wished to punish him for speaking out.

25. As a result of Defendants' conduct, Plaintiff's grievance was denied.

**May 23, 2015 Television Inmate Disciplinary Report**

26. On the evening of May 23, 2015, Defendants Brinkmeier and Blanton wrote a false and retaliatory inmate disciplinary report ("IDR") against Plaintiff claiming that he violated IDOC rules by having his television set on in his cell without being present.

27. That evening, Defendants Blanton and Brinkmeier entered Unit 60, where Plaintiff stayed, and closed the door behind them in order to conduct a pretextual and retaliatory compliance check directed at Plaintiff. At that moment, another correctional officer announced that no inmates could be in the hallway. Prior to this announcement, Plaintiff had just left his room to grab his laundry, but when Defendants entered the hall, they slammed the door behind them, preventing Plaintiff from getting back to his cell. They then conducted a specific compliance check directed at Plaintiff and not at all members of the unit.

28. This compliance check was conducted at an unusual time and specifically in order to retaliate against Plaintiff for using the grievance system and having won a lawsuit against IDOC officials for the destruction of his personal property.

29. When Plaintiff was allowed back in to his cell, Defendant Blanton informed him that this "compliance check" resulted in an IDR against Plaintiff for having his television set on when he was not in the cell

**May 24, 2015 Attack by Defendant Brinkmeier**

30. On the evening of May 24, 2015, Plaintiff was returning from the gym and entering the Unit 60 housing area when Defendant Brinkmeier, without justification and without provocation, attacked Plaintiff by snatching him by the upper left arm in an aggressive manner.

31. As a result of this physical assault, Plaintiff suffered sharp pain in his shoulder and significant bruising.

32. Plaintiff requested of Defendant Brinkmeier allow him to see a Lieutenant and to receive medical attention. Both requests were in accordance with IDOC policy. Defendant Brinkmeier refused to allow Plaintiff to do either, specifically to retaliate against Plaintiff.

33. The next day while Plaintiff was showering he continued to feel significant pain in his left arm and shoulder area. That evening he spoke to a Lieutenant in Defendant Brinkmeier's presence and the Lieutenant advised him to file a grievance because she had not witnessed what occurred.

34. As a result of Defendant Brinkmeier's conduct Plaintiff had to attend sick call for his pain and injuries.

35. The next day, May 26, 2016, Plaintiff went to work, but continued to feel pain in his shoulder. His supervisor called nursing staff and sent Plaintiff to the Health Care Unit. At that point, nursing staff treated Plaintiff as an assault patient, and caused a sergeant to document Plaintiff's injuries. A major then escorted Plaintiff to segregation under investigative status.

36. On May 27, 2015, Defendant Sage from Internal Affairs interviewed Plaintiff. Plaintiff gave a detailed, truthful statement to Defendant Sage about what happened when Defendant Brinkmeier attacked him, and gave him a list of witnesses who saw what happened.

37. Defendant Sage told Plaintiff he cause him to be released from segregation later that day, but his interview did not stop there. In an unusual move for Internal Affairs, Defendant Sage also questioned Plaintiff about his grievance against Defendant Grohan.

38. Defendant Sage did not release Plaintiff from segregation. In fact, he only told him this to try to encourage him not to pursue his grievances. Plaintiff did not drop his grievance as Defendant Sage hoped.

7

39. Instead, Defendant Sage, in an effort to retaliate against Plaintiff, caused Plaintiff to receive an additional IDR for purported giving false information to staff in connection with the May 24, 2015 Brinkmeier attack. Defendant Sage knew this IDR was false. He knew from his own investigation that other witnesses corroborated Plaintiff's account of this attack. Nevertheless, rather than fairly investigate Plaintiff's grievance, he instead retaliated against Plaintiff for pursuing that grievance.

40. Plaintiff went before the adjustment committee on June 9, 2015, a committee that included Defendants Chavez, Remmerse and Whitley. During that adjustment committee hearing, Defendant Chavez criticized Plaintiff for filing grievances, and told him words to the effect that he was an "ambulance chaser." Defendants Chavez, Remmerse and Whitley denied Plaintiff the opportunity to present witnesses and instead found him guilty based on purported confidential informants of Defendant Sage. Defendant Enloe then approved the recommendations of this body.

41. Defendant Sage's investigation and his resulting report claiming Plaintiff had lied in pursuing his grievance were fabricated.

42. Defendants Sage, Chavez, Remmerse, Whitley and Enloe deliberately denied Plaintiff a fair hearing. Defendants Chavez, Remmerse and Whitley found Logan guilty, and Enloe approved their recommendation despite knowing that these charges were false. They did so in an effort to punish him for using the grievance system.

43. As a result of these Defendants' actions, Plaintiff lost his job in the prison industry.

**Destruction of Plaintiff's Property While He Was In Segregation**

44. While Plaintiff was in segregation awaiting the hearing of this IDR, Defendant Reynolds caused Plaintiff's property to be collected. Defendant Reynolds and unknown employees of the Illinois Department of Corrections deliberately allowed Plaintiff's property, including his television, headphones, fan and typewriter to be damaged and/or destroyed. Defendant Reynolds and the other unknown employees did this in order to retaliate against Plaintiff for his use of the grievance system.

**Plaintiff's September 9, 2015 Emergency Grievance**

45. Plaintiff's increasing concern about the retaliation against him, and his concern that Defendant Martens was participating in a conspiracy to retaliate against him, caused him to file, on September 9, 2015, an emergency grievance with Defendant Enloe. Defendant Enloe refused to consider Plaintiff's concerns.

**July 8, 2016 Legal Boxes Shakedown**

46. On July 8, 2016, Defendants Mazano, Newman, and unknown employees of the Illinois Department of Corrections destroyed and/or damaged Plaintiff's legal boxes by going into the storage area and dumping out from them trial records, medical records, and trial exhibits. The law library found legal documents scattered all over the library floor from Plaintiff's legal boxes after this event. Plaintiff grieved and ultimately filed a complaint with the Court of Claims about this destruction. Defendants learned of this complaint.

**Threatening of Plaintiff's Witnesses**

47. Defendant Brinkmeier was promoted to Internal Affairs, which gave him the opportunity to further interfere with Plaintiff's efforts to grieve misconduct. Specifically, Defendant Brinkmeier told witnesses associated with one of Plaintiff's grievances words to the

9

effect that if they corroborated Plaintiff's grievances they would be targeted by staff just like Logan was being targeted.

**Plaintiff Is Transferred from His Living Quarters**

48. On or about September 7, 2017, Defendant Brinkmeier and other Defendants caused Plaintiff to be transferred to a different housing unit just as he was preparing to finalize paperwork related to an appeal of one of his grievances. This transfer was done in part to make it more difficult for Plaintiff to file his appeal.

**Defendants Gee and Mazano Threaten Plaintiff and Participate in Another Retaliatory IDR**

49. On September 25, 2017, Defendants Gee and Manzano interviewed Plaintiff, under the pretext they were investigating a charge against Plaintiff. During this interview Defendants told Plaintiff words to the effect that he had a number of grievances outstanding and that if he did not drop his grievance against Defendant Brinkmeier, they would make his prison stay tough.

50. Plaintiff did not drop his grievance against Defendant Brinkmeier, and as a result Defendants including Defendant Brinkmeier caused him to receive another IDR (9/26/17) which was also false and fabricated.

**Plaintiff's Letter to Governor Rauner**

51. Out of a sense of growing desperation and frustration, on or about December 11, 2017 Plaintiff wrote a letter to then-Governor Bruce Rauner letting him know what was going on at Dixon and asking him for his help.

52. This letter ended up with Defendants Varga and Enloe, who responded to the letter by providing false and inaccurate information in response that prevented Mr. Logan from

10

seeking help and oversight from individuals higher up in state government who could have helped him.

## Count I – 42 U.S.C. § 1983
## Retaliation

53. Plaintiff incorporates each paragraph of this Complaint as if fully restated herein.

54. As described in this Complaint, Plaintiff engaged in various activities protected by the First Amendment to the United States Constitution, including the use of the IDOC grievance process to complain about his unconstitutional treatment by Defendants and other IDOC employees.

55. As described more fully above, Defendants retaliated against him by assaulting him, calling him racial slurs, threatening him verbally, ignoring or denying other legitimate grievances Plaintiff filed, initiating false IDRs against him, causing him to lose his prison employment, denying him medical attention, damaging or destroying his personal property including important legal materials, harassing and threatening witnesses who attempted to come forward to support Plaintiff's claims, transferring his housing unit, and subverting his attempts to bring outside attention into what was happening at Dixon Correctional Center.

56. This retaliation was likely to deter future First Amendment activity by Plaintiff and others in the future.

57. Plaintiff's First Amendment protected speech was at least a motivating factor in Defendants' decision to take this retaliatory action.

58. Defendants' actions were objectively unreasonable, intentional, and done with malice and/or reckless indifference and/or conscious disregard to Plaintiff's rights.

59. Alternatively, Defendants were deliberately indifferent to the danger posed and harm likely to befall Plaintiff, and their failure to act was undertaken with malice, willfulness, and the deliberate indifference to Plaintiff's rights.

60. As a direct and proximate result of Defendants' misconduct, Plaintiff's rights under the First and Fourteenth Amendments of the United States Constitution were violated and he suffered injury, pain, suffering, and emotional distress, and the other damages described herein.

61. Plaintiff's injuries were caused by employees of the IDOC, including, but not limited to, the individually named Defendants, who acted pursuant to the policies and practices of the IDOC and of Dixon Correctional Center.

### Count II – 42 U.S.C. § 1983
### Conspiracy

62. Plaintiff incorporates each paragraph of this Complaint as if fully restated herein.

63. Defendants reached an agreement among themselves to deprive Plaintiff of his constitutional rights and to protect one another from liability for depriving Plaintiff of his rights, all as described in the various paragraphs of this Complaint.

64. In furtherance of the conspiracy, each of the co-conspirators committed overt acts and was an otherwise willful participant in joint activity.

65. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

66. As a direct and proximate result of the illicit prior agreement referenced above, Plaintiff's rights were violated and he suffered injuries, including pain, suffering & emotional distress and the other damages described herein.

67. Plaintiff's injuries were caused by employees of the IDOC, including, but not limited to, the individually named Defendants, who acted pursuant to the policies and practices of the IDOC and of Dixon Correctional Center.

## Count III – 42 U.S.C. § 1983
### Excessive Force (Eighth Amendment)

68. Plaintiff incorporates each paragraph of this Complaint as if fully restated herein.

69. As described more fully above, Defendants, including Defendant Grohan and Defendant Brinkmeier, physically assaulted Plaintiff.

70. Defendants' conduct was objectively unreasonable, intentional, and done with malice and/or reckless indifference to Plaintiff's rights.

71. Alternatively, Defendants were deliberately indifferent to the danger posed and harm likely to befall Plaintiff, and their failure to act was undertaken with malice, willfulness, and the deliberate indifference to Plaintiff's rights.

72. The assaults on Plaintiff constitutes deliberate indifference to Plaintiff's safety and rights. This deliberate indifference violates Plaintiff's rights under the Eighth Amendment of the United States Constitution.

73. As a direct and proximate result of Defendants' misconduct, Plaintiff's rights were violated and he suffered injury, pain, suffering, and emotional distress and the other damages described herein.

74. Plaintiff's injuries were caused by employees of the IDOC, including, but not limited to, the Defendants, who acted pursuant to the policies and practices of the IDOC and of Dixon Correctional Center.

## Count IV – 42 U.S.C. § 1983
## Due Process (Destruction of Property)

75. Plaintiff incorporates each paragraph of this Complaint as if fully restated herein.

76. As described more fully above, the actions of Defendants in causing Plaintiff's property to be damaged and destroyed violated Plaintiff's right to due process under the Fourteenth Amendment of the United States Constitution.

77. Because of Defendants' actions as set forth in this Complaint, including in lying about the events giving rise to the destruction of and damage to Plaintiff's property, and because of the policies of IDOC and the Dixon Correctional Center, he was left with no adequate post-deprivation remedy for Defendants' conduct.

78. Defendants' actions were objectively unreasonable, intentional, and done with malice and/or reckless indifference and/or conscious disregard to Plaintiff's rights. In the alternative, Defendants' conduct in allowing Plaintiff's property to be damaged and destroyed was negligent.

79. As a direct and proximate result of Defendants' misconduct, Plaintiff's rights were violated and he suffered the loss of his property as well as suffering, and emotional distress.

80. Plaintiff's injuries were caused by employees of the IDOC, including, but not limited to, the individually named Defendants, who acted pursuant to the policies and practices of the IDOC and of Dixon Correctional Center.

## Count V – 42 U.S.C. § 1983
## Failure to Intervene (First and Fourteenth Amendments)

81. Plaintiff incorporates each paragraph of this Complaint as if fully restated herein.

82. As described more fully above, Defendants had a reasonable opportunity to prevent the violation of Plaintiff's constitutional rights as set forth above had they been so inclined, but failed to do so.

83. Defendants failed to intervene despite their clear knowledge of the immediate harm likely to befall Plaintiff as a result of their actions in failing to protect Plaintiff from the retaliation of others.

84. Defendants' failures to act were objectively unreasonable, intentional, done with malice, and/or reckless indifference to Plaintiff's rights.

85. Alternatively, Defendants were deliberately indifferent to the harm likely to befall Plaintiff, and their failure to act was undertaken with malice, willfulness, and the deliberate indifference to Plaintiff's rights.

86. The failure to intervene to protect Plaintiff constitutes deliberate indifference to Plaintiff's rights. This deliberate indifference violates Plaintiff's rights under the First and Fourteenth Amendments of the United States Constitution.

87. As a direct and proximate result of Defendants' misconduct, Plaintiff's rights were violated and he suffered injury, pain, suffering, and emotional distress.

88. Plaintiff's injuries were caused by employees of the IDOC, including, but not limited to, the individually named Defendants, who acted pursuant to the policies and practices of the IDOC and of Dixon Correctional Center.

### Count VI – State Law Claim:
### Intentional Infliction of Emotional Distress

89. Each paragraph of this Complaint is incorporated as if restated fully herein.

90. In the manner described more fully above, by engaging in the conduct described in this complaint, Defendants engaged in extreme and outrageous conduct.

91. Defendants' actions set forth above were rooted in an abuse of power or authority.

92. Defendants' actions set forth above were undertaken with intent or knowledge that there was a high probability that the conduct would inflict severe emotional distress and with reckless disregard of that probability.

93. Defendants' actions set forth above were undertaken with malice, willfulness, and reckless indifference to the rights of others.

94. The misconduct described in this Count was undertaken by Defendants within the scope of their employment such that their employer, the IDOC and/or Dixon Correctional Center, is liable for their actions.

95. As a direct and proximate result of this misconduct, Plaintiff suffered injuries, including severe emotional distress.

96. As a direct and proximate result of this misconduct, undertaken pursuant to the policy and practice of Wardens Varga and Enloe, Plaintiff sustained damages including, but not limited to, physical injury, physical and emotional pain, and reasonable apprehension of great bodily harm.

### Count VII– State Law Claim:
### Negligent or Willful and Wanton Conduct

97. Each paragraph of this Complaint is incorporated as if restated fully herein.

98. In the manner described more fully above, the actions of Defendants breached the duty of care owed to detainees in their care.

99. Alternatively, the actions of Defendants were willful and wanton in that they demonstrated an utter indifference to the safety of others. Defendants were conscious that physical and emotional injury would probably result from the above-described course of action and recklessly disregarded the consequences of those actions.

100. As a direct and proximate result of Defendants' negligence and/or willful and wanton conduct, Leonard Logan suffered injuries, including physical and emotional pain and suffering.

### Count VIII – State Law Claim:
### Respondeat Superior

101. Each paragraph of this Complaint is incorporated as if restated fully herein.

102. In committing the acts alleged in the preceding paragraphs, Defendants were employees, members, and agents of the IDOC and/or Dixon Correctional Center acting at all relevant times within the scope of his or her employment.

103. Wardens Varga and Enloe are liable as principals for all torts committed by their agents.

### Count IX – State Law Claim:
### Indemnification

104. Each paragraph of this Complaint is incorporated as if restated fully herein.

105. Illinois law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

106. Defendants are or were employees of Dixon Correctional Center, who acted within the scope of their employment in committing the misconduct described above.

107. Defendants are obligated to pay any judgment entered against Defendants in an official capacity.

WHEREFORE, Plaintiff, LEONARD LOGAN, respectfully requests that this Court enter a judgment in his favor and against Defendants, Warden John Varga, Warden Donald Enloe, Lt. Grohan, James Martens, C/O Brinkmeier, Lt. Blanton, Lt. Merl Sage, C/O Raphael Chavez, C/O Remmerse, C/O Deborah Whitley, C/O Reynolds, C/O Mazano, C/O Newman, C/O Gee, and unknown employees of the Illinois Department of Corrections, awarding compensatory damages, including medical, punitive damages, attorneys' fees and costs, and any other relief this Court deems just and appropriate.

## JURY DEMAND

Plaintiff, LEONARD LOGAN, hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

RESPECTFULLY SUBMITTED,

/s/ Tara Thompson
One of Plaintiff's Attorneys

Arthur Loevy
Jon Loevy
Tara Thompson
LOEVY & LOEVY
311 N. Aberdeen St., 3rd Floor Chicago, IL 60607
(312) 243-5900

## **Certificate of Service**

      I, Tara Thompson, an attorney, certify that on April 23, 2019, I filed the foregoing Second Amended Complaint and caused it to be served on all counsel of record using the Court's CM/ECF system.

                                            /s/ Tara Thompson