**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

| | |
|---|---|
| Leonard Logan, ) | |
|           Plaintiff, ) | |
| ) | Case No. 18 CV 6874 |
| v. ) | |
| ) | Judge Philip G. Reinhard |
| Warden John Varga, et al., ) | |
| ) | |
|           Defendants. ) | |

**ORDER**

For the following reasons, defendants' motion to dismiss plaintiff's third amended complaint [62], is denied. Defendants are directed to answer the complaint within 14 days of the date of this order.

**STATEMENT-OPINION**

Plaintiff Leonard Logan, formerly an inmate at Dixon Correctional Center ("Dixon"), filed a *pro se* complaint on October 10, 2018, against (former) Governor Bruce Rauner, and various officials and employees of the Illinois Department of Corrections [1]. The suit is brought under 42 U.S.C. § 1983. Plaintiff filed a first amended complaint on November 9, 2018 [6]. Counsel entered an appearance on behalf of plaintiff on February 8, 2019 [12] and filed a second amended complaint on April 23, 2019 [23], removing Governor Rauner and other named defendants. On August 19, 2019, defendants filed a motion to dismiss plaintiff's second amended complaint for failure to state a claim [48]. Plaintiff filed a status report on September 13, 2019 [52]. In his status report, plaintiff requested the opportunity to file an amended complaint rather than respond to defendants' motion to dismiss. Plaintiff also indicated he was gathering grievance information and once that information was collected, would finalize an amended complaint. On October 18, 2019, plaintiff filed his third amended complaint [57]. Except for changes in spelling and additions of first names to some named defendants, plaintiff's second amended complaint and third amended complaint are identical. On November 27, 2019, defendants filed a motion to dismiss plaintiff's third amended complaint under Federal Rules of Civil Procedure 12(b)(6) [62]. Plaintiff filed a response to defendants' motion on December 31, 2019 [71]. Defendants filed their reply on January 14, 2020 [72]. The motion is now before the court for review.

    **A.**     **Standard of Review**

When evaluating a Rule 12 (b)(6) motion to dismiss, the court must "accept[] all well-pleaded facts as true and draw[] all reasonable inferences in favor of the . . . non-moving parties." *Bonnstetter v. City of Chicago*, 811 F.3d 969, 973 (7th Cir. 2016) (internal citations omitted). "A Rule 12(b)(6) motion challenges the sufficiency of the complaint itself." *Id.* "To state a claim, a complaint must first provide 'a short and plain statement of the claim showing that the pleader is

entitled to relief.'" *Id.* (citing FED. R. CIV. P. 8(a)(2)). "The statement of the claim must sufficiently give 'fair notice of what the ... claim is and the grounds upon which it rests' to the defendants." *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "To state a claim for relief, a complaint must provide more than 'abstract recitations of the elements of a cause of action or conclusory legal statements.' *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Instead, a plausible claim must include 'factual content' sufficient to allow the court 'to draw the reasonable inference that the defendant is liable for the misconduct alleged.' *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)." *Charleston v. Board of Trustees of University of Illinois at Chicago*, 741 F.3d 769, 772 (7th Cir. 2013).

### B.     Background

Plaintiff's complaint sets out a collection of incidents that occurred at Dixon that resulted in plaintiff filing grievances. Plaintiff alleges that while incarcerated at Dixon he used the prison grievance system to advocate for himself and for other inmates and to speak out against prison abuses and poor prison conditions. As such, he developed a reputation at Dixon as a person who understood the grievance system and was not afraid to speak out. Because of this, an animus developed against plaintiff by the prison staff who then punished and retaliated against him. Plaintiff's complaint alleges the following:

\*      On December 15, 2014, plaintiff was being escorted to the dining hall when defendant Groharing deliberately walked into his path. As plaintiff tried to sit down, Groharing shoved his hand into plaintiff's left shoulder and reached for plaintiff's identification card clipped to his clothing. Groharing pushed passed plaintiff, scanned plaintiff's ID card and threw it on the ground. He then walked back toward plaintiff and said: "Ni\*\*er, now you get the idea." Following this unprovoked incident, plaintiff requested an incident report. Instead of providing plaintiff with a report, Groharing threatened plaintiff. Plaintiff grieved the racial slur and physical force used by Groharing. Defendant Martens denied plaintiff's grievance and defendant Enloe concurred. Though both defendants knew plaintiff's grievance had merit, they wished to punish plaintiff for speaking out.

\*      On May 23, 2015, defendants Brinkmeier and Blanton conduced a pretextual and retaliatory cell compliance check directed at plaintiff in retaliation against plaintiff for using the grievance system and wining a lawsuit against prison officials. Defendants then wrote a false and retaliatory disciplinary report against plaintiff claiming plaintiff violated prison rules by having his television set on in his cell without being present.

\*      On May 24, 2015, defendant Brinkmeier attacked plaintiff by snatching him by the upper left arm in an aggressive manner as plaintiff was returning to his housing area. Plaintiff suffered sharp pain in his shoulder and significant bruising. Brinkmeier retaliated against plaintiff by not allowing plaintiff to see a lieutenant or to receive medical attention. That evening, plaintiff spoke with a lieutenant who advised him to file a grievance. Plaintiff also attended a sick call for his pain and injuries. Plaintiff went to work the next day but felt pain in his shoulder. He was sent to the health care unit where he was treated as an assault patient. A sergeant documented plaintiff's injuries and a major escorted plaintiff to segregation under an investigative status. On May 27, 2015, plaintiff was interviewed by defendant Sage. After giving a truthful account of what had

2

happened with defendant Brinkmeier as well as the incident with defendant Groharing, plaintiff was not released from segregation as promised. Defendant Sage only told plaintiff he would release him from segregation to encourage plaintiff not to pursue his grievances. Defendant Sage additionally retaliated against plaintiff by causing plaintiff to receive an additional disciplinary report for purportedly giving false information to staff regarding the Brinkmeier attack. Plaintiff went before the adjustment committee made up of defendants Chavez, Remmers, and Whitely. Defendants criticized plaintiff for filing grievances, deliberately denied plaintiff a fair hearing, and found him guilty. As a result, plaintiff lost his job in the prison industry.

\*   While in segregation waiting his disciplinary hearing, defendant Reynolds collected plaintiff's property in his cell and allowed it to be damaged and/or destroyed in retaliation against plaintiff for his use of the grievance system.

\*   On September 9, 2015, plaintiff filed an emergency grievance with defendant Enloe against defendant Martens. Plaintiff claimed Martens participated in a conspiracy to retaliate against him. Defendant Enloe refused to consider plaintiff's concerns.

\*   On July 8, 2016, defendants Manzano and Newman damaged and/or destroyed plaintiff's legal boxes. Plaintiff grieved and ultimately filed a complaint with the Court of Claims about this destruction. Defendants learned of this complaint.

\*   Defendant Brinkmeier was promoted to internal affairs where he told witnesses associated with one of plaintiff's grievances that if they corroborated plaintiff's grievances, they would be targeted by staff just like plaintiff was being targeted.

\*   On or about September 7, 2017, defendant Brinkmeier and other defendants transferred plaintiff to a different housing unit, in part to make it more difficult for plaintiff to finalize paperwork for an appeal of one of his grievances.

\*   On September 25, 2017, defendants Gee and Manzano were interviewing plaintiff for an investigation when they told him words to the effect that he had a number of outstanding grievances and that if he did not drop his grievance against defendant Brinkmeier they would make his prison stay tough. Plaintiff did not drop his grievance and as a result, defendants (including Brinkmeier) caused him to receive another false and fabricated disciplinary report.

\*   On December 11, 2017, plaintiff wrote a letter to then Governor Rauner asking for his help. The letter ended up with defendants Varga and Enloe who responded to the letter with false and inaccurate information. This prevented plaintiff from seeking help from persons higher up in state government who could have helped him.

Plaintiff brings federal claims against all defendants under 42 U.S.C. § 1983 for retaliation, conspiracy, excessive force, due process (destruction of property), and failure to intervene. Plaintiff brings state law claims for intentional infliction of emotional distress and negligent or willful and wanton conduct. He further brings a *respondeat superior* claim against defendants Varga and Enloe as principals, as well as an indemnification claim.

3

### C. Analysis

Defendants offer multiple theories in support of their motion to dismiss. The first is that the majority of the allegations brought by plaintiff under 42 U.S.C. § 1983 are barred by the statute of limitations.

In claims brought under Section 1983, courts look to the law of the state in which the personal injury occurred to determine the statute of limitations. *Wallace v. Kato*, 549 U.S. 384, 387 (2007); *Regains v. City of Chicago*, 918 F.3d 529, 533 (7th Cir. 2019). "Under Illinois law, a plaintiff must bring a personal injury action within two years after its accrual." *Id*. A personal injury claim "accrues" "when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Serino v. Hensley*, 735 F.3d 588, 591 (7th Cir. 2013). As noted above, plaintiff's complaint contains allegation that date from December 15, 2014, through December 11, 2017. Plaintiff filed his original complaint on October 10, 2018. If the time is measured by the dates of incidents (as set forth in the complaint), the majority would fall outside the two-year statute of limitations – leaving only the September 7, 2017, September 25, 2017, and December 11, 2017, incidents at issue.

Both parties agree that the period of limitations is an affirmative defense (FED. R. CIV. P. 8(c)), and a "plaintiff ordinarily need not anticipate and attempt to plead around affirmative defenses." *Hyson USA, Inc. v. Hyson 2U, Ltd.*, 821 F.3d 935, 939 (7th Cir. 2016). Yet, plaintiff can plead himself out of court if "the allegations of the complaint…set forth everything necessary to satisfy the affirmative defense." *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005). "However, because affirmative defenses frequently turn on facts not before the court at the pleading stage, dismissal is appropriate *only* when the factual allegations in the complaint unambiguously establish all the elements of the defense." *Hyson USA, Inc.*, 821 F.3d at 939 (citations and quotations omitted) (emphasis in original).

The Seventh Circuit has held that because the "chronological length of the limitations period is interrelated with provisions regarding tolling," federal courts must "borrow[] the state's tolling rules – including any equitable tolling doctrines." *Smith v. City of Chicago Heights*, 951 F.2d 834, 839-40 (7th Cir. 1992). And "[t]here can be no question that a federal court applying Illinois law must toll the statute of limitations if a statutory prohibition exists that prevents a plaintiff's cause of action." *Johnson v. Rivera*, 272 F.3d 519, 521 (7th Cir. 2001). Here, the statutory authority of the Prison Litigation Reform Act ("PLRA") requires prisoners to exhaust their administrative remedies before filing suit under § 1983. 42 U.S.C. § 1997e(a). Therefore, the measurement dates for purposes of the statute of limitations is not the dates of plaintiff's grievances, but the date of final exhaustion of administrative remedies. Plaintiff's complaint does not set forth details regarding efforts at exhaustion of administrative remedies. In response to this, defendant argues that plaintiff "has failed to articulate a single grievance that he contends tolled the statute of limitations." However, at this stage of the litigation, the court declines to burden plaintiff at the pleading stage with arguments in response to this affirmative defense. Details regarding the disposition of each grievances as pleaded by plaintiff in his complaint will come to light during discovery. Therefore, while the court declines to speculate on the future viability of some of plaintiff's claims, the court does not find that plaintiff has pleaded himself out of court.

Defendants next argue that plaintiff's grievance regarding his housing transfer on September 7, 2017, fails to state a constitutional violation. Plaintiff alleges that defendant Brinkmeier effected his housing transfer in order to make it more difficult for plaintiff to complete the appeal of one of his grievances. To establish a First Amendment retaliation claim under 42 U.S.C. § 1983, plaintiff must show that "(1) he engaged in protected activity; (2) he suffered a deprivation likely to deter future protected activity; and (3) his protected activity was a motivating factor in the defendants' decision to retaliate." *Daugherty v. Page*, 906 F.3d 606, 610 (7th Cir. 2018) (citing *Perez v. Fenoglio*, 792 F.3d 768, 783 (7th Cir. 2015)). Defendants argue plaintiff has failed to allege any facts that would establish that plaintiff's housing transfer deterred his ability to appeal his grievance, or that he suffered any injury. Plaintiff responds that defendants have ignored that defendants' conduct would likely deter future First Amendment activity by plaintiff. Plaintiff further argues he has alleged enough facts to state a claim for relief, as required by law. *See Bell Atlantic Corp.*, 550 U.S. at 555.

"[T]he First Amendment protects against retaliation even if the retaliatory action itself does not amount to an independent constitutional violation." *Holleman v. Zatecky*, 951 F.3d 873, 878 (7th Cir. 2020). And "a prisoner alleging a retaliatory transfer need not establish an independent constitutional interest in [cell placement], because the crux of his claim is that state officials violated his *First Amendment* rights by retaliating against him for his protected speech activities…Thus, the fact that a prisoner does not have a constitutional right to a particular prison placement does not doom [his] case." *Id.* (emphasis in original). Here, while not a well-developed claim, the court finds plaintiff has adequately stated a claim for retaliation to survive a dismissal.

Finally, defendants argue plaintiff has failed to state a constitutional claim against defendants Varga and Enloe because plaintiff has failed to allege personal involvement in his constitutional tort. Specifically, defendants' position is that plaintiff's allegations against them is based on a *respondeat superior* theory of liability. Plaintiff responds that his complaint does not rest on *respondeat superior*, but direct liability.

"[A]n *individual* cannot be held liable in a § 1983 action unless he caused or participated in the alleged constitutional deprivation." *Grieveson v. Anderson*, 538 F.3d 763, 778 (7th Cir. 2008) (emphasis in original) (citation omitted); *Zentmyer v. Kendall County, Ill.*, 220 F.3d 805, 811 (7th 2000) (Liability under Section 1983 arises only when the plaintiff can show that the defendant was "personally responsible for a deprivation of a constitutional right."). Plaintiff alleges that defendants Varga and Enloe were "significant actors" in denying his constitutional rights. Specifically, plaintiff argues these defendants were part of a conspiracy to deprive him of his constitutional rights, participated in retaliating against him for exercising his First Amendment rights, and failed to intervene despite knowing that other defendants were violating his rights.

In his complaint, plaintiff alleges defendant Enloe concurred with defendant Martens' denial of plaintiff's grievance regarding the December 2014 dining hall alleged assault by defendant Groharing. Plaintiff alleges Enloe wished to punish plaintiff for speaking out. Plaintiff next alleges defendant Enloe denied plaintiff a fair hearing in the May 2015 alleged attack on plaintiff by defendant Brinkmeier. According to plaintiff, Enloe approved the denial of plaintiff's grievance in an effort to punish him for using the grievance system. Plaintiff claims Enloe refused to consider his concerns regarding defendant Martens participation in a conspiracy to retaliate

against him in an emergency grievance filed in September of 2015. Plaintiff also claims defendants Enloe and Varga responded to a letter plaintiff wrote to then Governor Rauner about what was happening at Dixon. In the response, defendants Enloe and Varga provided Governor Rauner with false and inaccurate information. This prevented plaintiff from seeking help from state officials who could have helped him.

Plaintiff argues in his response brief these factual allegations are sufficient to allege direct retaliation against him in violation of his First Amendment rights. In regard to plaintiff's failure to intervene claims, plaintiff argues Enloe and Varga were aware of the unconstitutional conduct and did nothing. The Seventh Circuit has long held that individual liability under § 1983 requires "personal involvement in the alleged constitutional deprivation…[and] [a]lthough direct participation is not necessary, there must at least be a showing that [defendant] acquiesced in some demonstrable way in the alleged constitutional violation." *Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir. 2003). Without commenting on the strength of plaintiff's claims against defendants Enloe and Varga at this point in the litigation, the court finds that plaintiff has sufficiently pled allegations against them for retaliation and failure to intervene to survive dismissal.

For the above stated reasons, defendants' motion to dismiss plaintiff's third amended complaint [62], is denied. Defendants are directed to answer the complaint within 14 days of the date of this order.

Date: 07/09/2020  ENTER:

_____
United States District Court Judge

Electronic Notices. (LC)