## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## WESTERN DIVISION

| | |
|---|---|
| Leonard Logan, ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | Case No. 18 CV 06874 |
| v. ) | |
| ) | Magistrate Judge Lisa A. Jensen |
| John Varga, Robert Groharing, ) | |
| Deborah Whitley, John Reynolds, ) | |
| Dan Newman, Colin Brinkmeier, ) | |
| Merle Sage, Donald Enloe, James Martens, ) | |
| Renee Blanton, Raphael Chavez, ) | |
| Michael Remmers, Arthur Manzano, ) | |
| and Taylor Gee, ) | |
| ) | |
| *Defendants*. ) | |

### REPORT AND RECOMMENDATION

For the following reasons, it is this Court's Report and Recommendation that Defendants' affirmative defense of failure to exhaust administrative remedies be granted as to the allegations in paragraphs 51-52 of the third amended complaint and denied as to all other claims. Any objection to this Report and Recommendation must be filed by February 24, 2021. Failure to object may constitute a waiver of objections on appeal. *See Provident Bank v. Manor Steel Corp.*, 882 F.2d 258, 260-61 (7th Cir. 1989).

### I. BACKGROUND

Plaintiff Leonard Logan, while an inmate at Lawrence Correctional Center ("Lawrence"), filed a *pro se* civil rights action pursuant to 42 U.S.C. § 1983 concerning various events that occurred at Dixon Correctional Center ("Dixon.") Dkt. 1. Thereafter, Plaintiff obtained counsel and filed a second and then a third amended complaint. The third amended complaint (hereinafter "the Complaint") names Defendants Warden John Varga, Warden Donald Enloe, Lt. Groharing, C/O James Martens, C/O Colin Brinkmeier, Lt. Renee Blanton, Lt. Merle Sage, C/O Raphael Chavez, C/O Michael Remmers, C/O Deborah Whitley, C/O John Reynolds, C/O Arthur Manzano, C/O Dan Newman, C/O Taylor Gee, and unknown employees of the Illinois Department of Corrections. Dkt. 57. The Complaint alleges that Defendants retaliated against Plaintiff for filing grievances and sought to deter his right to free speech by attacking him, initiating false disciplinary proceedings against him, and causing him other harms in violation of his rights under federal and state law. Defendants asserted the affirmative defense of failure to exhaust administrative remedies. On December 15, 2020, this Court conducted an evidentiary hearing on this affirmative defense pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008).

## II. LEGAL STANDARD

The Prison Litigation Reform Act ("PLRA") requires inmates to exhaust available administrative remedies before filing a federal lawsuit concerning prison conditions. 42 U.S.C. § 1997e(a); *see Pavey*, 544 F.3d at 740; *Perez v. Wis. Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999). To exhaust administrative remedies, an inmate must proceed through all steps of the institution's grievance process that are available to him. *Ford v. Johnson*, 362 F.3d 395, 397 (7th Cir. 2004). That means the inmate must grieve his complaint "using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)) (emphasis in original). The PLRA does not, however, set forth the procedures an inmate must take to exhaust administrative remedies at a particular institution; rather, the procedures are established by each institution. *See Jones v. Bock*, 549 U.S. 199, 218 (2007). The Seventh Circuit requires strict compliance with the PLRA's exhaustion requirement. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). An inmate "who does not properly take each step within the administrative process has failed to exhaust [administrative] remedies, and thus is foreclosed by § 1997e(a) from litigating." *Pozo*, 286 F.3d at 1024.

Failure to exhaust administrative remedies is an affirmative defense. *Jones*, 549 U.S. at 216. The burden, therefore, is on the defendant to prove by a preponderance of the evidence that an administrative remedy was available to the plaintiff and that the plaintiff failed to exhaust that remedy. *Jones v. Dart*, No. 14 C 1929, 2016 WL 1555588, at *2 (N.D. Ill. Apr. 18, 2016) (collecting cases).

State law determines the administrative remedies that a state prisoner is required to exhaust. *Pyles v. Nwaobasi*, 829 F.3d 860, 864 (7th Cir. 2016) (citing *King v. McCarthy*, 781 F.3d 889, 894 (7th Cir. 2016). The grievance procedures for the Illinois Department of Corrections ("IDOC") are set forth in the Illinois Administrative Code. Ill. Admin. Code tit. 20, § 504.800, *et seq*. An inmate must first submit a grievance to his counselor. 20 Ill. Admin. Code § 504.810(a). If the inmate is not satisfied with the counselor's resolution, he must then file a formal grievance with his grievance officer. *Id.* A grievance must be filed with the counselor or grievance officer within 60 days after the discovery of the incident that gives rise to the grievance. *Id.* The grievance officer shall consider the grievance and report his findings and recommendations in writing to the Chief Administrative Officer.[1] *Id.* § 504.830(e). The warden shall review the findings and recommendation and advise the offender of the decision in writing. *Id.* If, after the warden responds, the inmate still believes that the grievance has not been resolved to his satisfaction, he may appeal in writing to the IDOC Director. *Id.* § 504.850(a). The Administrative Review Board ("ARB"), appointed by the Director, must receive the appeal within 30 days after the date of the warden's decision. *Id.* The ARB shall then submit a written report of its findings and recommendations to the Director, who shall review them and make a final determination of the grievance. *Id.* at § 504.850(d)-(e). An inmate does not exhaust his administrative remedies until the ARB rules upon his appeal. *See id.* § 504.850.

## III. DISCUSSION

---

[1] This is typically the warden. For purposes of this opinion, this Court will refer to the Chief Administrative Officer as the warden.

The Complaint sets out ten incidents that Plaintiff alleges give rise to both federal and state law violations. Defendants contend that Plaintiff did not fully exhaust his administrative remedies with respect to five of those alleged events: (1) a May 14, 2015 attack by Defendant Brinkmeier; (2) Defendant Enloe's refusal to consider Plaintiff's September 9, 2015 emergency grievance; (3) a September 7, 2017 retaliatory housing transfer; (4) a September 25, 2017 false disciplinary ticket and (5) the mishandling of a December 11, 2017 letter Plaintiff wrote to Governor Rauner.

The allegations of a failure to exhaust administrative remedies with respect to the above five incidents were addressed during the Pavey hearing. Defense counsel called two witnesses – Travis Bayler[2] and Christine Terry,[3] introduced numerous grievances, and submitted briefing on the issue. Plaintiff's counsel called Mr. Logan to testify, introduced several additional grievances, and submitted responsive briefing on the issue.

**May 24, 2015 Brinkmeier incident**

The Complaint alleges that on May 24, 2015, Defendant Brinkmeier attacked Plaintiff without justification or provocation. Pl.'s Compl. at 6, Dkt. 57. Defendant Brinkmeier then refused Plaintiff's requests to see a lieutenant and receive medical attention. *Id.* at 7. Defendant Sage interviewed Plaintiff a few days later about the Brinkmeier assault as well as an earlier grievance against Defendant Groharing. *Id.* Plaintiff asserts that Defendant Sage, trying to encourage Plaintiff not to pursue his grievances, told Plaintiff that he would be released from segregation. *Id.* Plaintiff also alleges that Defendant Sage caused him to receive a false inmate disciplinary report ("IDR") in retaliation for pursuing the grievance against Defendant Brinkmeier. *Id.* at 8. Plaintiff went before the Adjustment Committee on June 9, 2015 and alleges that he was denied a fair hearing by Defendants Sage, Chavez, Remmers, Whitley, and Enloe. *Id.*

There are three grievances relevant to the assault by Defendant Brinkmeier and the events that followed. Two of the grievances, presented into evidence by Defendants, were written on May 24, 2015 and May 29, 2015. In the May 24th grievance, Plaintiff complained that Defendant Brinkmeier pulled him out of a line of inmates and physically attacked him, and subsequently "denied [him] a [Lieutenant]." Plaintiff alleged that Defendant Brinkmeier was retaliating against him for requesting grievances due to an incident that had occurred the day before involving Defendants Brinkmeier and Blanton. In the May 29th grievance, Plaintiff complained of events that occurred in the days following the assault. He wrote, among other things, that he was placed in segregation under the guise of being held for investigation and that he spoke with Defendant Sage about his situation, who told Plaintiff that he would be released later that day. According to the formal grievance log entered into evidence, Plaintiff submitted these grievances to the counselor on June 4, 2015 and received the counselor's response on June 10, 2015. The grievance log reflects that the grievances were not forwarded to the grievance officer or the warden, and instead were sent directly to the ARB. The ARB received both grievances on October 28, 2015 and returned them to Plaintiff on November 5, 2015 indicating that additional information was required including the response of the grievance officer and the warden. At the *Pavey* hearing, both Mr. Bayler and Ms. Terry testified that, based on the ARB's response, it appeared Plaintiff

---

[2] At the time of the hearing, Mr. Bayler was employed as an ARB Chairman.

[3] At the time of the hearing, Ms. Terry was employed as a grievance officer at Dixon.

did not properly exhaust his administrative remedies with respect to these two grievances because he appealed to the ARB without getting a response from the grievance officer and the warden.

Plaintiff testified that he did forward his May 24 and May 29, 2015 grievances to his grievance officer. In support, he introduced a third grievance written on July 25, 2015. This grievance included information about the following: the events that transpired between May 23-27, 2015; the IDR he received from Defendant Sage on June 6, 2015; the Adjustment Committee hearing regarding the IDR held on June 9, 2015; the damage inflicted upon his personal property on or about June 25, 2015; and the facts that led him to conclude that Defendants were retaliating against him. The grievance officer received the grievance on July 25, 2015. The Grievance Officer's Report, dated October 21, 2015, stated that the two previous grievances from May 24th and May 29th were also being addressed within this Grievance Officer's Report. Based upon a "total review" of the information, the grievance officer recommended that Plaintiff's grievances be denied. On October 23, 2015, the warden, Defendant Enloe, signed the report, indicating that he concurred with the recommendation. The ARB received Plaintiff's appeal on October 28, 2015 and, on June 13, 2016, denied the grievance on the basis that they found no violation of Plaintiff's due process and they were satisfied that he had committed the offenses cited in the IDR. Mr. Bayler and Ms. Terry testified that the July 25, 2015 grievance, if meant to address the incident on May 24, 2015, was filed later than the requisite 60-day timeframe. However, with respect to the IDR dated May 27, 2015, they testified that the July 25 grievance was timely filed. They also testified that the ARB denied that grievance on the substance, so it appeared to be properly exhausted.

Defendants argue that Plaintiff failed to exhaust his administrative remedies with respect to all three grievances. Regarding the May 24 and May 29, 2015 grievances, Defendants contend that the ARB's response dated November 5, 2015 pointed out procedural defects. Regarding the July 25, 2015 grievance, Defendants argue that it cannot act to exhaust with respect to the May 24, 2015 Brinkmeier incident because it was filed more than 60 days after that alleged attack. Therefore, Defendants argue, all three grievances violated the IDOC rules. Plaintiff argues that Defendants' position focuses exclusively on the May 24, 2015 incident but ignores all of the issues that occurred afterwards, which are alleged in the Complaint. Plaintiff asserts that he exhausted his remedies with respect to the July 25, 2015 grievance, and points out that IDOC records indicate the grievance officer's response was meant to also address both May 2015 grievances. Accordingly, Plaintiff contends that all three grievances were encompassed within the grievance officer's response and that Plaintiff has exhausted his remedies with respect to each of them.

The Court finds that Plaintiff exhausted his administrative remedies with respect to his allegations concerning the May 24, 2015 Brinkmeier assault, the disciplinary ticket that followed, and the allegations of retaliation arising therefrom. It is true that on November 5, 2015, upon receipt of the May 24 and May 29, 2015 grievances, the ARB stated that it needed additional information including a copy of the grievance officer's and the warden's responses. However, the ARB also received Plaintiff's July 25, 2015 grievance along with the grievance officer's response that indicated he was responding not only to the July 25, 2015 grievance but to the previous May 24 and May 29, 2015 grievances, as well. Defendants did not present any testimony or otherwise contradict the position that the Grievance Officer's Report responding to Plaintiff's July 25, 2015 grievance was a response to all three grievances. *See* 20 Ill. Admin. Code 504.830(e) ("Responses to duplicate grievances on issues that are currently being grieved may be combined in one

4

...

response."). Given that the Grievance Officer's Report served as a response to the content of all three grievances, the allegations set forth within them were properly exhausted when Plaintiff later timely appealed to the ARB.

Moreover, once the May 24 and May 29, 2015 grievances were resubmitted with the July 25, 2015 grievance, the ARB did not deny these grievances on the basis that they were untimely or that the proper procedures were not followed. It denied the grievances on the merits. "[A] procedural shortcoming like failing to follow the prison's time deadlines amounts to a failure to exhaust only if prison administrators explicitly relied on that shortcoming." *Conyers v. Abitz*, 416 F.3d 580, 585 (7th Cir. 2005); *see also Riccardo v. Rausch*, 375 F.3d 521, 524 (7th Cir. 2004) ("[W]hen a state treats a filing as timely and resolves it on the merits, the federal judiciary will not second-guess that action, for the grievance has served its function of alerting the state and inviting corrective action."); *Ford v. Johnson,* 362 F.3d 395, 398 (7th Cir. 2004) (stating that by deciding prisoner's grievance without invoking a forfeiture doctrine the ARB established that the prisoner exhausted his state remedies). Thus, the Court finds that Plaintiff's May 24, May 25, and July 25, 2015 grievances exhausted his administrative remedies with respect to the allegations in his Complaint concerning the May 24, 2015 Brinkmeier incident, the resulting disciplinary ticket, and the allegations of retaliation arising therefrom.

**September 9, 2015 Emergency Grievance**

The Complaint alleges that Plaintiff filed an emergency grievance on September 9, 2015 with Defendant Enloe due to his increasing concern about the retaliation against him, specifically with respect to Defendant Martens. Pl.'s Compl. at 9, Dkt. 57. Plaintiff stated that Defendant Enloe refused to consider his concerns. *Id*.

According to the September 9, 2015 grievance, which was admitted at the *Pavey* hearing, Plaintiff complained that he had not received a response to numerous grievances, that his grievances were purposely being mishandled by Defendant Martens, and that Defendant Martens had failed to properly investigate his July 25, 2015 grievance. Plaintiff asserted that the grievance needed to be considered an emergency in order to prevent further retaliation. On September 11, 2015, Defendant Enloe, the warden, conducted an emergency review and checked the box that read: "[A]n emergency is not substantiated. Offender should submit his grievance in the normal manner." The ARB received Plaintiff's appeal on September 22, 2015 and filled out a Return of Grievance form indicating that additional information was required to appeal. Specifically, it checked the box that requested the counselor's response and the grievance officer and warden's response. Defendants argue that Plaintiff failed to exhaust this grievance because he sent the grievance to the ARB rather than starting the process over after he learned that Defendant Enloe did not characterize his grievance as an emergency.

There are two problems with Defendants argument. First, in *Williams v. Wexford Health Sources, Inc.,* 975 F.3d 828 (7th Cir. 2020), the Seventh Circuit held that for grievances filed prior to April 1, 2017, a prison could not require an inmate to go through the non-emergency grievance process after being informed that his grievance is not an emergency.[4] This is because, prior to that

---

[4] The facts in *Williams* are similar to those in Plaintiff's situation. The plaintiff in *Williams* submitted an emergency grievance to the warden who responded with the pre-printed statement "No; an emergency is not substantiated.

date, the Illinois Administrative Code did not expressly address what should happen if the warden concluded that the grievance did not present an emergency.[5] Thus, where an inmate appealed the denial of an emergency designation directly to the ARB, the court of appeals held he had adequately exhausted his administrative remedies. *Williams*, 975 F.3d at 833-34. Based on *Williams*, Plaintiff's failure to re-grieve the September 9, 2015 emergency grievance through the non-emergency process is not fatal to his claim.

Defendants allege that *Williams* does not apply to the present case because *Williams* involved an inmate who was unaware of the correct grievance process, whereas here they have established that Plaintiff knew the correct procedures. Specifically, they established at the *Pavey* hearing that Plaintiff knew how to appeal emergency grievances according to Dixon's requirements. They referred to an instance in 2012 when Plaintiff re-grieved a matter through the non-emergency process after being informed that his grievance would not be treated as an emergency. Plaintiff argues that Defendants' reading of *Williams* is overly restrictive. The Court agrees that the ruling in *Williams* was based primarily on the fact that the facility was requiring the plaintiff to follow a procedure that was not required in the Administrative Code. *Id.* at 833. Ultimately, however, this Court need not decide whether the ruling in *Williams* excuses Plaintiff from complying with the facility's requirement to re-grieve a non-emergency grievance.

Plaintiff testified that a few days after receiving a response from Defendant Enloe indicating his emergency was not substantiated, he was called up to the administrative building to discuss the issues he raised in the referenced grievances. He spoke with Defendants Enloe and Martens, and Defendant Martens subsequently took all of Plaintiff's documents and mailed them directly to the ARB, which was outside of the normal procedure. Plaintiff testified that he understood at that point that the ARB was going to consider the emergency grievance he had originally submitted to Dixon. He stated that was also the reason why he was unable to submit his grievance through the normal procedure.

Defendants never confronted this testimony. Even though defense counsel represents both Defendants Enloe and Martens in the underlying litigation, they were not called to refute Plaintiff's contention that Defendant Martens took Plaintiff's documents and mailed them directly to the ARB. If it was Defendants who submitted the appeal directly to the ARB, as Plaintiff testified,[6] their conduct interfered with Plaintiff's exhaustion of his remedies. The Seventh Circuit has rejected the argument that "an inmate will have failed to exhaust as a matter of law any time prison officials decide to assert noncompliance with a written grievance procedure that effectively has

---

Offender should submit this grievance in the normal manner." *Id.* at 831. The plaintiff then attempted to appeal that determination to the ARB. *Id.* The ARB returned the grievance to the plaintiff and indicated that he had not satisfied the requirements of the standard procedure, which required him to provide responses from his counselor, the grievance officer, and the warden. *Id.*

[5] In 2017, the Code was amended to fill in this gap. *See* 2017 IL REG TEXT 429108 (NS) (showing both pre- and post-April 1, 2017 versions). It now provides that "[i]f the Chief Administrative Officer determines that the grievance should not be handled on an emergency basis, the offender shall be notified in writing that he or she may resubmit the grievance as a non-emergency, in accordance with the standard grievance process." 20 Ill. Admin. Code § 504.840(c).

[6] It is Defendants' burden to establish that the administrative remedy was available, and that Plaintiff failed to pursue it. *See Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015). Because the credibility of Plaintiff's statements has not been challenged, the Court credits Plaintiff's testimony.

been modified with staff acquiescence or participation." *Curtis v. Timberlake*, 436 F.3d 709, 712 (7th Cir. 2005). Here, Defendants' mailing Plaintiff's documents directly to the ARB constituted noncompliance with written procedure, so their conduct excused Plaintiff's exhaustion of his remedies. *See Swisher v. Porter Cty. Sheriff's Dep't*, 769 F.3d 553, 555 (7th Cir. 2014) ("When a jail official invites noncompliance with a procedure the prisoner is not required to follow the procedure. When jail personnel mislead inmates about how to invoke the procedure the inmates can't be blamed for failing to invoke it.") (internal citations omitted). As such, this Court finds that Plaintiff exhausted his September 9, 2015 emergency grievance.

**Housing Transfer**

Plaintiff alleges in the Complaint that on or about September 7, 2017, Defendant Brinkmeier and other Defendants caused Plaintiff to be transferred to a different housing unit in part to make it more difficult for Plaintiff to file an appeal of one of his grievances. Pl.'s Compl. at 10, Dkt. 57.

In Plaintiff's grievance written on September 7, 2017, he complained that he was retaliated against by being moved to a "much tighter cell" in an "already over-crowded unit." Plaintiff also recounted several other occasions on which he was moved to a different cell out of retaliation. On September 15, 2017, the counselor responded that housing assignments were based on "classification, security, and/or administrative decision and not a matter of offender preference." The grievance officer received the appeal on September 21, 2017. The Grievance Officer's Report, dated October 23, 2017, recommended denial of Plaintiff's grievance and reiterated the counselor's response. On October 25, 2017 the warden, Defendant Varga, signed the report, indicating that he concurred with the recommendation. Plaintiff appealed the response on October 26, 2017. According to a date stamp on the document, the ARB received the appeal on November 28, 2017 and, on November 29, 2017, denied the grievance as untimely.

Regarding the September 7, 2017 grievance, both Mr. Bayler and Ms. Terry testified that Plaintiff appeared to have failed to exhaust because the grievance was not received by the ARB within the requisite 30 days of the warden's decision. Additionally, Ms. Terry was asked to review the CHAMP record.[7] She testified that there were no entries reflecting outgoing mail from Plaintiff to the ARB between the dates of October 26 and November 28, 2017. She also confirmed that there was not an entry reflecting that the grievance was received by the ARB between those dates. When Mr. Bayler was asked to review the grievance log, he testified that Plaintiff had grieved about how Dixon was handling his mail on numerous occasions, including in July 2016, March 2017, and July 2017.

At the hearing, Plaintiff testified that he mailed his grievance out to the ARB on the same date that he signed it. He testified that he did not wait until he transferred to Lawrence on November 8, 2017 to submit his appeal because he knew he only had 30 days from the date of the

---

[7] A CHAMP record, also known as a Cumulative Counseling Summary, is a case history management program maintained for all IDOC inmates. It reflects the prison staff's interactions with inmates, including correspondence relating to grievances. *See Cano v. Dixon Corr. Ctr.*, No. 18 CV 50080, 2020 WL 70930, at *2 (N.D. Ill. Jan. 7, 2020); *Shaw v. Osmundson*, No. 16-1355-HAB, 2018 WL 11241970, at *3 (C.D. Ill. May 2, 2018).

7

warden's decision to appeal it. Defendants questioned whether Plaintiff had written over or changed the date on his grievance, and Plaintiff denied doing so.

Defendants argue that Plaintiff failed to exhaust his administrative remedies because the ARB received his appeal more than 30 days after the CAO's decision. Plaintiff contends that Dixon's failure to timely mail his appeal to the ARB constitutes a "machination" that rendered the grievance system functionally unavailable to him. Plaintiff asserts that his testimony establishes his timely submission of his grievance to Dixon for mailing to the ARB, whereas none of the Defendants' records accurately reflect when it was sent from Dixon or received by the ARB. In addition, there was no testimony from any IDOC employees refuting that Plaintiff submitted his grievance for mailing on October 26, 2017. As a result, Plaintiff argues that the Court should credit his testimony.

The Court finds that Plaintiff has exhausted his administrative remedies relating to the housing transfer. Defendants are correct that appeals must be received by the ARB within 30 days of the warden's decision. *See* 20 Ill. Admin. Code § 504.850(a). But the Supreme Court has made clear that when prison administrators thwart inmates from taking advantage of the grievance process through machination, the administrative process becomes unavailable and, as a result, exhaustion is not required. *Ross v. Blake*, 136 S. Ct. 1850, 1854 (2016). Plaintiff put forth evidence indicating that he immediately appealed the warden's decision and mailed it to the ARB, that his mail was mishandled (as he had been grieving about for the past year), and that the CHAMP record failed to reflect that his grievance was sent from the facility *at any time* despite proof that it was received by the ARB. Defendants offered no contrary evidence or explanation in response to these assertions. Absent any conflicting testimony or other evidence presented by Defendants and given Plaintiff's testimony and the missing information in the CHAMP record, the Court finds Plaintiff's testimony credible. *See Wilborn v. Ealey,* 881 F.3d 998, 1004 (7th Cir. 2018) ("At *Pavey* hearings, judges may hear evidence, find facts, and determine credibility.") (citing *Pavey v. Conley*, 663 F.3d 899, 904 (7th Cir. 2011). Plaintiff has exhausted his administrative remedies as to those matters contained in his September 7, 2017 housing transfer grievance.

### September 2017 Retaliatory IDR

The Complaint alleges that, on September 25, 2017, Defendants Gee and Manzano interviewed Plaintiff under the pretext that they were investigating a charge against him and threatened Plaintiff concerning his grievance against Defendant Brinkmeier. Pl.'s Compl. at 10, Dkt. 57. Because Plaintiff did not drop his grievance, Defendants caused him to receive another false IDR. *Id*.

In the relevant emergency grievance, dated October 17, 2017, Plaintiff wrote that he was placed in segregation on September 9, 2017 while he was under investigation for alleged sexual misconduct. He stated that Defendants Gee and Manzano interviewed him on September 25, 2017 about the alleged misconduct, and their investigation expanded into Plaintiff's personal property. Plaintiff complained that, in the Adjustment Committee's report written by Defendant Remmers on September 26, 2017, he was wrongfully found guilty of "unauthorized personal property" and "unauthorized organizational activity." Plaintiff noted that Defendant Varga approved the report on October 12, 2017. Plaintiff asserted that the grievance needed to be considered an emergency

because he was denied a fair and impartial hearing, because a transfer was involved, and because of the harm associated with inmates being transferred to another prison. On October 23, 2017, the warden, Defendant Varga, conducted an emergency review and determined that it was not an emergency. The ARB received Plaintiff's appeal on November 28, 2017 and, on November 30, 2017, denied the grievance, finding that there was no violation of Plaintiff's due process and that they were satisfied he committed the offenses cited.

Defendants argue in their brief that Plaintiff failed to exhaust his administrative remedies with respect to the IDR Plaintiff received in September 2017. They assert that, after Defendant Varga denied the emergency grievance, Plaintiff appealed it directly to the ARB rather than resubmitting it through the normal procedure as directed. However, at the *Pavey* hearing, Defendants' witness, Mr. Bayler, testified that the ARB will directly review a grievance relating to discipline without any facility response if the offender is no longer at the facility where the discipline occurred. This is consistent with the Illinois Administrative Code which allows for the filing of grievances directly with the ARB when the grievance involves "disciplinary proceedings that were made at a facility other than the facility where the offender is currently assigned." 20 Ill. Admin. Code § 504.870. Mr. Bayler concluded that, because Plaintiff was transferred to Lawrence on November 8, 2017, the filing of his grievance directly with the ARB constituted proper exhaustion. Following this testimony, Defendants did not present any evidence to contradict that conclusion. Accordingly, the Court finds that Plaintiff has exhausted his grievance relating to the September 2017 IDR.

**Letter to Governor Rauner**

Plaintiff alleges in the Complaint that in December 2017, he wrote a letter to then-Governor Bruce Rauner about his situation at Dixon. Pl.'s Compl. at 10-11, Dkt. 57. Plaintiff claims that Defendants Varga and Enloe responded to the letter by providing false and inaccurate information in response that prevented him from seeking assistance from individuals higher up in state government who could have helped him. *Id.*

Plaintiff admits that he did not grieve Defendant's Varga and Enloe's actions related to his December 11, 2017 letter to Governor Rauner. He asserts that the letter was meant to serve as an indication of Defendants' intent rather than a separate incident and, therefore, the lack of exhaustion in connection with the letter is irrelevant. Defendants argue that the only allegations against Defendants Enloe and Varga were in relation to this letter and, since Plaintiff failed to exhaust his administrative remedies with respect to this incident, Defendants Enloe and Varga should be dismissed.

The Court finds that Plaintiff failed to exhaust his administrative remedies with respect to his allegations against Defendants Enloe and Varga related to the Rauner letter. It is this Court's report and recommendation that those allegations which are contained in paragraphs 51-52 of the Complaint be dismissed.

Defendants further argue that the failure to exhaust with respect to the allegations concerning the Rauner letter should result in the total dismissal of Defendants Enloe and Varga from this action. However, in an order denying Defendants' motion to dismiss, the District Judge

9

stated that Plaintiff had "sufficiently pled allegations against [Defendants Enloe and Varga] for retaliation and failure to intervene." Order at 6, Dkt. 82. The District Judge listed several of the factual allegations involving Defendant Enloe in the complaint that support Plaintiff's retaliation claim.[8] *See id*. at 5-6. Given that there are a number of allegations referencing Defendant Enloe, which this Court has now found to have been properly grieved, dismissal of Defendant Enloe at this time is unwarranted. The District Judge also included both Defendants Varga and Enloe in his determination with respect to the failure to intervene claim. Defendant Varga is referenced in Plaintiff's emergency grievance regarding the September 2017 retaliatory IDR as having approved that report. Additionally, Plaintiff alleges that Defendant Enloe failed to consider his concerns regarding Defendant Martens in his emergency grievance from September 2015. Therefore, given that there are fully grieved allegations other than the Rauner letter, the Court will not recommend the dismissal of Defendants Enloe or Varga at this time.

### IV. CONCLUSION

For the foregoing reasons, this Court enters a Report and Recommendation finding that Defendants have shown that Plaintiff failed to exhaust his administrative remedies with respect to his allegations relating to the letter to Governor Rauner but have not met their burden with respect to the remaining allegations in the third amended complaint. Accordingly, the Court recommends that all allegations relating to the letter to Governor Rauner (paragraphs 51-52) be dismissed without prejudice for failure to exhaust. *See Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004) ("[A]ll dismissals under § 1997e(a) should be without prejudice.").

Date: February 10, 2021     By: _/s/ Lisa A. J._____
                                                     Lisa A. Jensen
                                                     United States Magistrate Judge

---

[8] One of the incidents the District Judge references is the dining hall incident. Notably, Defendants do not allege that the dining hall incident was improperly grieved. *See* Def.'s Br. at 2, Dkt. 99.